(91 South. 172)

No. 24973.

CITY OF NEW ORLEANS v. CALAMARI.

(Jan. 2, 1922. On Rehearing, Feb. 27, 1922.)

(Syllabus by Editorial Staff.)

1. **Evidence** ⟨⟩32 — **Judicial cognizance not taken of city ordinance.**

The Supreme Court on appeal cannot take judicial cognizance of the provisions of a city ordinance.

2. **Municipal corporations** ⟨⟩590, 661(1)—**New Orleans vested with police power, including power to regulate use of streets.**

The General Assembly has vested in the city of New Orleans so much of the police power as is required for the discharge of its functions, including the power to enact and enforce all ordinances necessary for the protection of the lives, property, health, comfort, conveni-

ence, and general welfare of its inhabitants, and including the power to regulate the use of the streets and to maintain them in safe condition.

3. **Municipal corporations** ⟨⟩661(1)—**No property right in streets for purposes of private business unless such business is a public service or convenience.**

The streets of the towns and cities being among the things that are "public" and "for the common use," no individual can have a property right in such use for the purposes of his private business, unless in the nature of a public service or convenience, such as would authorize the grant by the state or by the particular city or town acting under the authority of the state, and in such cases the right can be exercised only in accordance with the conditions of the grant; and an individual may accept the grant with the conditions imposed, or may refuse to accept the conditions, in which case there is no grant.

4. **Municipal corporations** ⟨⟩661(2) — **Ordinance forbidding use of certain streets as stands for vehicles operated for hire valid.**

New Orleans Ordinance No. 6186, forbidding the use of certain streets as a stand for any vehicle operated for hire, is not unnecessary, arbitrary, discriminating, unreasonable, confiscatory, illegal, null, unconstitutional, void or ultra vires, notwithstanding Ordinance No. 6173, prohibiting the parking of vehicles between certain places for longer than 15 minutes.

5. **Constitutional law** ⟨⟩211—**Equal protection clause does not prevent reasonable classifications by a city, and unreasonableness must be proved.**

Equal protection of the Fourteenth Amendment to the United States Constitution does not take away from a state or a municipal corporation the power to classify in the adoption of police laws or regulations, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without reasonable basis, and is therefore purely arbitrary, and one who assails the classification in such law or regulation must carry the burden of showing that it does not rest upon any reasonable basis.

6. **Constitutional law** ⟨⟩212 — **Fourteenth Amendment does not hamper exercise of police power.**

The Fourteenth Amendment to the United States Constitution was not intended to hamper or to authorize the courts to interfere with the state's exercise of its police power, either di-

rectly or through the action of its municipal bodies, in the regulation and promotion of the morals, health, comfort, convenience, and safety of her citizens.

### On Rehearing.

7. **Municipal corporations** ⟨⟩703(3) — **Ordinance held to permit vehicles for hire to park for limited time.**

. New Orleans Ordinances, Nos. 6173, 6186, the first prohibiting the use of certain streets as stands for vehicles operated for hire, and the second prohibiting parking of vehicles in certain places for more than 15 minutes, together permit vehicles for hire to be parked in the prohibited area for less than 15 minutes.

Provosty, C. J., dissenting.

Appeal from Recorder's Court of New Orleans, Traffic Division; John M. Duffy, Recorder.

Peter Calamari was convicted of a violation of an ordinance of the City of New Orleans relative to operating a "to hire" automobile, and appeals. Affirmed.

Wm. H. Byrnes, Jr., and Daly & Hamlin, all of New Orleans, for appellant.

Ivy C. Kittredge, City Atty., and Roland B. Howell, Asst. City Atty., both of New Orleans, for appellee.

LAND, J. The defendant was tried in the recorder's court of the city of New Orleans on an affidavit charging the violation of Ordinance No. 6186, relative to operating a "to hire" automobile on St. Charles street in said city. He was convicted and sentenced to pay a fine of $25, or, in default of payment, to serve 30 days in the parish prison. Prior to conviction, defendant filed a demurrer to the affidavit, for the reason that said ordinance is "unnecessary, arbitrary, discriminating, unreasonable, confiscatory, illegal, null, unconstitutional, void and ultra vires."

[1] Counsel for defendant in this demurrer refers to the provisions contained in Ordinance No. 6173, as a basis for the charge that Ordinance 6186 was passed for the sole purpose of depriving defendant from operating a car for hire at all, etc.; but, as this court cannot take judicial cognizance of the provisions of Ordinance No. 6173, and as a copy of this ordinance has not been incorporated in the transcript of appeal, we are compelled to pass upon the legality of Ordinance No. 6186 without taking into consideration the prior ordinance.

Ordinance No. 6186, C. C. S., is "an ordinance prohibiting the use of certain streets as stands for vehicles operated for hire," and provides as follows:

"Whereas, in order to relieve congestion in streets in the central business district of the city, it is expedient to facilitate the primary use of the streets as ways for public travel by limiting their use as stands for vehicles for hire; therefore,

"Section 1. Be it * * * ordained by the commission council of the city of New Orleans, that, except as otherwise provided in this ordinance, no person shall use as a stand for any vehicle operated for a fee, charge, profit, reward or hire. any part of any of the following streets, to wit:" [Then follow the names of a number of streets, running from either side of Canal street, and including St. Charles street from Canal street, to Howard avenue.]

"Provided, that nothing herein shall be construed as depriving operators of such vehicles of the rights common to them and to operators of other vehicles to park vehicles in the streets for other purposes, as said rights are or may be determined and regulated by law or ordinance."

"Section 2. Be it further ordained, etc., that any person violating any of the provisions of this ordinance shall, on conviction, be fined not more than twenty-five dollars, or imprisoned for not more than thirty days, or both, at the discretion of the court having jurisdiction."

[2] The Constitution of the state vests all the legislative power in the General Assembly, which grant includes all of the police power; and the General Assembly has vested in the city of New Orleans so much of the police power as is required by that corporation for the discharge of its functions, including the power to enact and to enforce all ordinances necessary for the protection

of the lives and property, the preservation of the health, and the promotion of the comfort, convenience, and general welfare of its inhabitants, and including the power to regulate the use of the streets and to maintain them in a safe condition. City of New Orleans v. Le Blanc, 139 La. 113, 71 South. 248.

An inspection of the ordinance in question shows clearly that it grants to all operators of vehicles for hire the same right of using freely the streets for the primary purpose of public travel, and the same privilege of parking accorded to the operators of other vehicles. The ordinance in question does not limit in any way, or to any extent, the right of the operators of vehicles for hire to conduct their business of transporting passengers or freight over any of the streets named in this ordinance; but it does prohibit the use of the streets by them as stands for private business, in order to prevent the congestion of traffic along such streets, and the subsequent denial of the free use of same to the public in common. It is true that the streets belong to the public, and that the operators of "to hire" cars, as a part of the public, have the right to use them. However, it does not follow that, because defendant is engaged in a legitimate business, it can be lawfully conducted in a public street, without the consent of the city authorities. Section 28 of Act 159 of 1912, the charter of the city of New Orleans, declares that "no privilege of any kind for the use of any part of any street, * * * in connection with the conduct of any private business, except such as are, * * * connected with grants of the charter referred to in section 29 * * * shall be granted, * * * except on adequate consideration," etc., and the business of operating to hire cars is not referred to in section 29, which includes ordinances providing for the lighting of streets or public places, the lease of the public markets or the establishment of markets, or other utilities to become public on terms, the operation of ferries, the removal or disposal of garbage, etc., or purporting to award a contract covering the performance or discharge of any public duty or function.

[3] The streets of the towns and cities in the state of Louisiana being among the things that are "public" and "for the common use," no individual can have a property right in such use for the purposes of his private business, unless, speaking generally, that business being in the nature of a public service or convenience, such as would authorize the grant, the right has been granted by the state, which alone has the power or right to authorize it, or by the particular city or town, acting under the authority of the state, and, in such cases the right can be exercised only in accordance with the conditions of the grant; that is to say, an individual seeking, but not possessing, a right of that kind, may accept the grant, with the conditions imposed by the offer, in which case he becomes bound by the conditions, or he may refuse to accept the conditions, in which case there is no grant, and without the grant so offered, or some other, from the authority competent to make it, he can never acquire the right to make use of a street as his place of business. Le Blanc v. City of New Orleans, 138 La. 243, 70 South. 212; City of New Orleans v. Le Blanc, 139 La. 125, 71 South. 248.

"The municipal regulation of vehicles of all sorts, commonly used within the corporate limits, is a valid exercise of the police power, not inherent, but granted to the corporation. The city may prescribe what style of vehicle shall be used for public passenger service, but not for private use; what streets they must travel, if regular lines; and where hacks must stand; whether the driver may leave them, and what mark of distinction he shall wear. They may also prohibit fast driving, but not slow driving; may require a license for each vehicle; and may assess a penalty against a public conveyance for refusal to carry a passenger." Cyc. 731, 732.

[4] The ordinance which defendant has attacked is not discriminatory in a constitutional sense, as it applies not only to the operators of to hire cars, but also to the operators of all other vehicles to hire. It does not discriminate between individuals of the same class. It imposes a like burden upon all operators of vehicles for hire. State v. Hiney, 130 La. 621, 58 South. 411; City v. Sanford, 137 La. 651, 69 South. 35, L. R. A. 1916A, 1228.

[5] The equal protection of the Fourteenth Amendment does not take away from the state or a municipal corporation the power to classify in the adoption of police laws or regulations, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without reasonable basis, and is therefore purely arbitrary; and one who assails the classification in such law or regulation must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary. Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 31 Sup. Ct. 337, 55 L. Ed. 377, Ann. Cas. 1912C, 160.

[6] The Fourteenth Amendment was not intended to hamper or to authorize the courts to interfere with the state's exercise of its police power, either directly or through the action of its municipal bodies, in the regulation and promotion of the morals, health, comfort, convenience, and safety of her citizens. Barbier v. Connolly, 113 U. S. 27, 5 Sup. Ct. 357, 28 L. Ed. 923.

The ordinance in question being a legitimate exercise of the police power of the city of New Orleans, the judgment appealed from is affirmed.

PROVOSTY, C. J. (dissenting in cases 24973 and 24974[1]). The streets do not belong to the city. The public has the unquestionable right to the free use of them, and au-

tomobiles have this same right, subject only to reasonable regulations by the city.

"Ordinances which are partial or unfair, or which discriminate in favor of one class against another, are invalid." 28 Cyc. 370. "As it would be unreasonable and unjust to make, under the same circumstances, an act done by one person penal, and if done by another not so, ordinances which have this effect cannot be sustained." Dillon, Mun. Corp. (3d Ed.) § 322.

All these propositions are elementary, and are disputed by no one.

The accused, Calamari, was arrested because his automobile was stationary on the street with a sign upon it announcing that it was "for hire." The accused, Le Blanc, was arrested because while his automobile was stationary on the street he said "Auto?" to two passers-by, as an invitation to them to hire his automobile. These arrests were thus made under an ordinance reading:

"Whereas to relieve congested traffic conditions in streets in the central business district of the city, it is expedient to facilitate the primary use of the streets as ways for public travel by limiting their use as stands for vehicles operated for hire, therefore,

"Section 1. Be it ordained, etc., that except as otherwise provided in this ordinance, no person shall use as a stand for any vehicle operated for a fee, charge, profit, reward or hire, any part of any of the following streets," etc.

Here are named all the streets, except Canal street, in the central part of the city, on which alone, of course, it would pay to operate automobiles for hire. And the ordinance then continues:

"Provided that nothing herein shall be construed as depriving operators of such vehicles of the rights common to them and to operators of other vehicles to park vehicles in the streets for other purposes, as said rights are or may be determined and regulated by law or ordinance."

It is here said that automobiles for hire may stand or park like other automobiles, provided they so stand or park for other purposes than for hire; that is to say, that they may not stand or park at all.

---

[1] Case No. 24974 is reported at post, p. 751, 91 South. 177.

How long an automobile for hire may be at a standstill without violating the ordinance is a matter left to the sweet discretion of the policeman, for the ordinance makes no mention of length of time. It simply makes it penal to stand or park.

Interpreting it, I should say that the meaning was that an automobile for hire may stop to put off, or take on, a passenger, but not longer; that, for instance, it may not remain stationary for the length of time that might be required for the person hiring it to go into a store and make purchases.

As illustrative of this, I may say that on the trial of these two cases no evidence was adduced to show what length of time the automobiles in question had remained stationary on the street. That point was evidently considered to be immaterial. And, so it, in fact, is, for the ordinance forbids standing on the street, and makes no mention of length of time. The effect is to forbid stopping at all except perhaps transitorily.

The proviso of the ordinance says that automobiles for hire may stand or park "for other purposes" than for hire. This is but saying that they cannot stand or park at all, for an automobile for hire operates for no other purpose than for hire, and hence to forbid it to stand for that purpose is to forbid it to stand at all. The reservation, therefore, which the proviso makes in their favor of "the rights common to them and to operators of other vehicles to park for other purposes" than for hire, reserves to them nothing. It is the exact equivalent of what the reservation to a negro of all the rights common in law to him and the white man would be if coupled with the proviso that in order to exercise these rights he would have to cease to be a negro and become a white man, or that he would have first to die.

The right of automobiles other than those for hire to stand or park is regulated by section 2 of article 5 of ordinance 6173, Com. C. These other automobiles may stand or park all day on Sundays and from 6 p. m. to 8 a. m. on other days, and for 15 minutes at a time during the other hours of these other days.

In the "whereas" of the ordinance in question in this case the reason is given why automobiles for hire are not allowed to park. That reason is declared to be "to relieve congested traffic conditions." The automobiles for hire are allowed to operate to their hearts' content: only they must not stand or park. It is the standing or parking, alone and exclusively, that is declared to congest the street and to be forbidden. In other words, automobiles for hire are thus discriminated against not for the reason that the fact of their being operated for hire renders them amenable to the police power in a greater degree than other automobiles, but solely and simply for the reason that if allowed to stand or park they would congest the traffic on the street. Their right to use the street is recognized and approved. Only they must not stand or park, and the reason, and sole reason, why they may not do so, is that if they do they will congest the street. Now, in all reason, will not any other class of automobiles congest the street just as much as an automobile for hire will; and, if both kinds congest the street alike if allowed to stand or park, is not an ordinance whose declared and sole purpose is to avoid congestion of the street unreasonable when solely to avoid congestion it excludes altogether the automobiles for hire and admits all others.

Says Dillon, supra:

"As it would be unreasonable and unjust to make, under the same circumstances, an act done by one person penal, and if done by another not so, ordinances which have this effect cannot be sustained."

The "circumstances" which led to the enactment of the ordinance in question are declared in the whereas of the ordinance to be that traffic on the streets in question will be congested if automobiles of all description are allowed to stand or park upon them. These "circumstances" are precisely alike for the automobiles for hire as for all other classes of automobiles, because a stationary automobile for hire will not congest the street any more than a stationary automobile of any other kind will do. Observe that it is not because the automobile for hire is for hire that it is denied the right to stand or park, but, by the express declaration of the whereas of the ordinance it is in order that the traffic on the street may not be congested. Manifestly, therefore, under this ordinance one class of automobile is penalized for an act for which, under precisely similar circumstances, other classes are not.

If it is said that the reason of this discrimination is that these automobiles for hire are more numerous, I answer that that is not a ground for excluding them altogether from privileges enjoyed by other automobiles; and that, moreover, if mere number or numerousness is to be the basis of discrimination, the exclusion should be of the Ford automobiles, which in all probability are more numerous than those for hire.

If the reason for the discrimination is said to be that the automobiles for hire have a less right to the use of the street for standing purposes, or that they congest or obstruct the street to a greater degree than others, I answer that the very reverse is the case. The automobiles for hire being for the use of the public have in a sense a better right to the use of the streets which belong to the public than the other automobiles have which are merely for private use. And they are less likely to congest or obstruct, since they are at all times in charge of a chauffeur and remain stationary only so long

as strictly necessary; whereas most other automobiles are used by their owners for coming and returning from the places of business of these owners, and would be left parked and unattended during the entire business day if allowed. These private automobiles when thus parked are in reality using the public street as a garage; whereas the operation of the automobile for hire, as well when standing as when moving, is for a public or quasi public purpose.

This view of the situation would come out very strongly if the commission council undertook to exclude the cars of the New Orleans Railways Company from the streets in order to make room for street cars operated for private use. The automobiles for hire are operated for public use as much so as the cars of the New Orleans Railways Company are; and the other kinds of automobiles are operated for private purposes.

The operation of these automobiles for hire is for the convenience of the public. That they are for hire, far from being a circumstance justifying their exclusion, is a circumstance fortifying their right to admission.

I respectfully dissent.

### On Rehearing.

By the WHOLE COURT.

O'NIELL, J. [7] After the rehearing was granted in this case, the Ordinance No. 6173, which is the ordinance mainly referred to in the proviso in section 1 of the ordinance in contest, was, by mutual consent of the attorneys for defendant, appellant, and the attorneys for the city, made a part of the transcript of appeal.

Ordinance No. 6173 prohibits, generally, the parking of vehicles, within the area described in Ordinance No. 6186, for a period exceeding 15 minutes, between the hours of 8 a. m. and 6 p. m., except on Sundays. The

same ordinance declares that the standing or parking of a vehicle on any of the streets mentioned, during the hours mentioned, at successive intervals in one day, shall, if the total time of the parking in one day exceeds 15 minutes, be considered a violation of the ordinance, unless, in the interval or intervals, the vehicle was moved for the bona fide purpose of travel, and not merely for the purpose of evading the ordinance.

The ordinance in contest expressly reserves to the drivers of vehicles for hire all of the rights that are common to them and to the drivers of any and all other classes of vehicles, to park their vehicles in the streets mentioned, for any purpose other than as a "stand" for a vehicle for hire. The expression "as a stand" for a vehicle for hire has a well-known meaning, and that meaning is emphasized by the proviso in the ordinance that the drivers of such vehicles may park for other purposes, according to the rights and regulations which have been ordained as applying to all classes of vehicles. In other words, so long as a driver of a vehicle for hire does not abuse the parking privilege which he enjoys in common with the drivers of other classes of vehicles, by using his parking privilege as a subterfuge for establishing a stand for conducting business on the streets where it is forbidden, he is not guilty of a violation of the ordinance. For example, if the driver of such a vehicle, with a "For Hire" sign hung out, should habitually park his car, for a period of 14 minutes in the same locality, the circumstance would be against him, and he might be called upon to show that in the intervals the vehicle was moved for the bona fide purpose of travel, and not merely for the purpose of evading the ordinance. In like manner, if the driver of such a car, with the customary sign hung out, should habitually park in the same spot every Sunday, or between the hours of 6 p. m. and 8 a. m. on other days, the circumstance might arouse some suspicion in the mind of a traffic officer.

But if, while pretending to enjoy the parking privilege that is common to the drivers of all classes of vehicles, the driver of a vehicle for hire should actually ply his vocation at a place which he is forbidden "to use as a stand for any vehicle operated for a fee, charge, profit, reward, or hire," he would be guilty of a violation of the ordinance.

Whether the circumstances in any particular case would justify a conviction of a violation of the ordinance is a matter for the judge of the traffic court to determine. The only question for us to determine is whether the ordinance is violative of the equal protection clauses of the Constitution; that is, whether the classification or discrimination, between the drivers of vehicles for hire and the drivers of all other vehicles, is an arbitrary classification or discrimination. The constitutional right to the equal protection of the law means merely that every person is entitled to stand before the law on equal terms with, and to enjoy the same privileges that are enjoyed by, and to bear the same burdens that are imposed upon, other persons in a like situation. Drivers of vehicles for hire are not in the same situation, in relation to the municipal government, as drivers of other vehicles. Drivers of vehicles for hire are licensed to use the public streets for their private business and profit; they are therefore subject to such restrictions as the municipal government may reasonably impose; and they may be deprived of such privileges, in the conduct of their business, as the municipal government may reasonably withhold. A classification in a police regulation, defining the class of citizens who shall, or those who shall not, be affected by the regulation, is not to be regarded as an arbitrary discrimination if the courts can imagine any reasonable or legitimate basis for it. The legitimate reasons for which a municipal government may impose more severe regulations upon vehicles

for hire than are imposed upon other vehicles, especially in localities where, or at times when, traffic is congested, are obvious. Our conclusion is that the ordinance in contest does not discriminate arbitrarily against the proprietors or drivers of vehicles for hire.

The decree heretofore rendered in this case is now reinstated and made the final judgment and decree of this court.

PROVOSTY, C. J. (dissenting). The majority opinion on rehearing interprets the ordinance as allowing automobiles for hire to stand like other automobiles, provided it be not at an adopted, habitual, or regular, place, or stand. This extracts the teeth of the ordinance. In this toothless condition the cabmen will, I assume, have no quarrel with it. But the declared object of the ordinance being to prevent the streets in question from becoming congested, the majority opinion appears to me to be founded on what appears to me to be a mistaken idea—that standing on the street will congest the street more if habitually at one place than if not habitually at one place. I will add that not a word in the evidence shows that what the accused were convicted of was of habitually standing in one place; and that if in reality what they were prosecuted for was merely for standing on the street, and not for habitually standing at one place, the city authorities will I hope "have a heart" and let them off.

I respectfully dissent.