[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 676 
Defendant was tried and convicted in the first recorder's court of the city of New Orleans under an affidavit charging him with the violation of Ordinance No. 10,375, C.C.S., as amended by Ordinance No. 10,563, C.C.S., relative to moving household and personal effects without making a report to the chief of police.
On the trial of the case, defendant who is a member of P. Schick Sons, admitted that on August 4, 1928, he had moved the furniture of Mrs. S. Gaspnel from 2303 Cleveland avenue to 2417 St. Thomas street, city of New Orleans, and had failed to report it to police headquarters. He was sentenced to pay a fine of $25 or to serve 30 days in prison in default of payment, and has appealed.
Before the introduction of any evidence in the case, defendant demurred to the affidavit filed against him on the following grounds:
First. That Ordinance No. 10,375, as amended by Ordinance No. 10,563, is ultra vires.
Second. That the ordinance and its amendment are unnecessary, arbitrary, discriminatory, inquisitorial, confiscatory, and violate the rights, privileges, and immunities guaranteed to the defendant by the Constitutions of the United States and of the state of Louisiana.
Section 1 of Ordinance No. 10,375 provides that persons, firms, or corporations engaged in the transfer business "for hire," when hauling or moving to a new place of abode the household goods or personal effects, other than baggage, of any person in the city of New Orleans, shall make a written *Page 678 
report thereof to the chief of police within one day thereafter, on a blank form prescribed in the ordinance, and furnished free of cost by the city of New Orleans.
Section 2 of the ordinance requires the person causing the removal of any property described therein to give to the person hauling or moving the goods or effects the correct name of the owner or party in possession of such property, and punishes the refusal to do so, as well as the giving of a fictitious name so as to willfully deceive the mover or hauler.
Section 3 of the ordinance requires the report of removal to contain the names of the owner of the vehicle and of the person moved, the place from which and to which removed, the date of moving, and the date of filing of the report with the chief of police.
Section 4 of the ordinance defines the duties of the chief of police with reference to the keeping of the reports filed with him.
Section 5 of the ordinance denounces the penalty for its violation.
Ordinance No. 10,375 was amended by Ordinance No. 10,563 only in the particular of striking out the words "for hire" in the original ordinance, thereby imposing upon all classes engaged in moving or hauling household goods and personal effects in the city of New Orleans, whether "for hire" or not, the duty of making to the chief of police the report required by the ordinance.
Several bills of exception were reserved on the trial of the case by defendant, but the only one of these bills deserving serious consideration, in our opinion, is bill No. 2, taken to the overruling of the demurrer by the recorder.
In section 1, subparagraph (e), of Act 159 of 1912 (the Charter of the City of New Orleans), it is declared that: "The City shall also have all powers, privileges and functions which, by or pursuant to the Constitution *Page 679 
of this State, have been, or could be, granted to or exercised by any city."
And in section 8, subparagraph (13), of the charter, it is provided that the commission council shall have power "to exercise general police power in the City of New Orleans."
It appears from the above provisions that the city of New Orleans is clothed with ample police power to enact the ordinance in question, if it is a reasonable regulation in the constitutional sense of that term. The attack upon the ordinance as ultra vires is therefore without merit and cannot prevail, unless the local enactment should be found to be in conflict with the exercise by the general government of some power it possesses under the Constitution, or with some right which that instrument gives or secures. Jacobson v. Massachusetts, 197 U.S. 11, 26, 25 S. Ct. 358, 49 L. Ed. 649, 3 Ann. Cas. 765.
The police power, as generally defined, extends to the protection of the lives, health, and property of the citizens, and to the preservation of good order and the public morals. The entire property and business within the local jurisdiction of the several states is within its control. The pursuit of any lawful trade or business may be subjected to reasonable regulations under the police power of the state, for the protection of the public health or safety, and the courts will interfere with the action of the local legislative authority only when it is plain and palpable that such action has no real or substantial relation to the public health, or safety, or to the general welfare. Rast v. Van Deman Lewis Co., 240 U.S. 342, 36 S. Ct. 370, 60 L. Ed. 679, L.R.A. 1917A, 421, Ann. Cas. 1917B, 455; Jacobson v. Massachusetts, 197 U.S. 11, 30, 25 S. Ct. 358, 49 L. Ed. 643, 651, 3 Ann. Cas. 765; Thomas Cusack Co. v. Chicago, 242 U.S. 526, 37 S. Ct. 190, 61 L. Ed. 473, L.R.A. 1918A, 136, Ann. Cas. 1917C, 594; Mugler v. Kansas, 123 U.S. 623, 8 S. Ct. 273, 31 L. Ed. 205. *Page 680 
"`The legitimate exercise of the police power is not subject to restraint by constitutional provisions for the general protection of rights of individual life, liberty, and property.' State v. Schlemmer, 42 La. Ann. 1166, 8 So. 307, 10 L.R.A. 135. And the Fourteenth Amendment * * * does not interfere with the proper exercise of that power. 6 R.C.L. pars. 193, 194; L'Hote v. New Orleans, 177 U.S. 596, 20 S. Ct. 788, 44 L. Ed. 903." State v. McCormack, 142 La. 580, 77 So. 288, L.R.A. 1918C, 262; Lacoste v. Department of Conservation, 151 La. 909, 92 So. 381.
Applying these principles to the provisions of the ordinance before us, we find nothing therein contained that is arbitrary, unreasonable, and oppressive. The ordinance does not, in our judgment, deny to any citizen the equal protection of the laws, or take the property of the citizen without due process of law, in contravention of the Fourteenth Amendment to the Federal Constitution. Its terms apply equally to all engaged in moving and hauling goods and effects within the jurisdiction of the city of New Orleans, whether "for hire" or otherwise. Due process of law and the equal protection of the laws are had when the laws affect alike all persons similarly situated. Walston v. Nevin,128 U.S. 582, 9 S. Ct. 192, 32 L. Ed. 544; Giozza v. Tiernan,148 U.S. 662, 13 S. Ct. 721, 37 L. Ed. 599; Duncan v. Missouri,152 U.S. 382, 14 S. Ct. 570, 38 L. Ed. 485; Wagner v. St. Louis, 284 Mo. 410, 224 S.W. 413, 12 A.L.R. 495; Lawson v. Judge, 175 Mich. 375, 141 N.W. 623, 45 L.R.A. (N.S.) 1152.
Nor, in our opinion, can the provisions of the ordinance be construed as an unreasonable restraint upon the liberty of those engaged in the traffic business, or upon the business itself. Defendant is not concerned with the rights of those whose property is moved. All constitutional rights are *Page 681 
subject to such reasonable conditions as may be deemed by the governing authority essential to the safety, health, peace, good order, and morals of the community.
As announced in State v. City of New Orleans, 154 La. 282, 97 So. 443, 33 A.L.R. 260: "It is not necessary, for the validity of the ordinances in question, that we should deem the ordinances justified by considerations of public health, safety, comfort, or the general welfare. * * * If such considerations could have justified the ordinances, we must assume that they did justify them."
Sections 1 and 3 of the ordinance provide that the reports as to the moving of household goods and other personal effects, together with the names of the owner of the vehicle and of the owner or person in possession, as well as the designation of the place from and to which the goods or effects are removed, shall be made to the chief of police.
It is ordained by section 4 of the ordinance: "That it shall be the duty of the Chief of Police to keep in a well bound book, open for inspection at the Police Station, all such certificates and blanks alphabetically indexed, as required by Section 3 hereof, provided the entire expense and cost of executing and carrying out the provisions of this section shall be free of cost to the City, except the expense of furnishing said book, blanks, or certificates."
In our judgment, several substantial considerations of public order, safety, and morals might well have prompted the enactment of the moving ordinance adopted by the commission council of the city of New Orleans.
In the first place, these reports enable the police force to locate more readily goods stolen or fraudulently obtained, to confine vice within restricted areas, and to apprehend more quickly an offender who may have changed his place of abode immediately before or after the commission of a crime. *Page 682 
In the second place, such reports, by the information furnished, secure in a more efficient manner a general and uninterrupted surveillance by the police over the activity of the criminal and vicious classes in a large city, thereby affording better protection to good order, public safety, and public morals.
The publicity of the reports is an additional safeguard, as it enables a citizen to make the necessary report, after searching the record, should the mover or hauler of goods or effects be derelict in his duty under the ordinance.
As declared in State v. City of New Orleans, 154 La. 283, 97 So. 444, 33 A.L.R. 260: "If the municipal council deemed any of the reasons which have been suggested, or any other substantial reason, a sufficient reason for adopting the ordinance in question, it is not the province of the courts to take issue with the council. We have nothing to do with the question of the wisdom or good policy of municipal ordinances."
It belongs to the legislative branch of the government to exert what are known as the police powers of the state and to determine, primarily, what measures are appropriate or needful for the protection of the public morals, health, or safety, and we find no occasion in the present case to interfere with the discretion vested in and exercised by the commission council of the city of New Orleans in this respect. Jacobson v. Massachusetts, 197 U.S. 11, 26, 25 S. Ct. 358, 49 L. Ed. 649, 3 Ann. Cas. 765; Garrett v. Aby, 47 La. Ann. 618, 630, 17 So. 238.
On the trial of the case an attempt was made to go behind the ordinance and to show that it was passed for the protection and benefit of retail dealers selling on the installment plan.
The conduct or motives of the commission council of the city of New Orleans cannot thus be questioned. We are concerned as a court only with the question as to whether the commission council, as a body, acted within *Page 683 
the legitimate scope of the police power delegated to the city of New Orleans by the state, or whether such action was unreasonable, arbitrary, and oppressive. This question must be determined by the provisions contained in the ordinance itself. Dillon on Corporations (3d Ed.) p. 326; Villavaso v. Barthet, 39 La. Ann. 247, 259, 1 So. 599.
Our conclusion is that the ordinance is constitutional and valid.
The conviction and sentence are therefore affirmed.
 On Application for Rehearing.