LE BLANC, Justice.
On June 16, 1950 defendant was charged 'by an affidavit sworn before J. St. Clair Favrot, Jr., Judge of the City Court of the City of Baton Rouge, with having operated a bus for the transportation of passengers for hire in that city without a franchise or temporary permit therefor, in violation of Section 1 of the “Bus Ordinance of 1949” adopted by the City Council on July 6, 1949. He immediately filed a motion to quash the affidavit on the ground that the ordinance under which he stood charged is illegal, invalid and without force for the following reasons: (1) That the right to control the streets of the City of Baton Rouge and to grant franchises for the use thereof is vested in the State of Louisiana and is exercisable only by the Legislature of the State ; (2) that the City of Baton Rouge is a municipal corporation created by the State of Louisiana and is vested only with those powers which are granted to- it by the State; (3) that the said City has never been vested with the right or power to grant a franchise or temporary permit as a condition precedent for the operation of a bus for the transportation of passengers for hire and (4) that the bus ordinance adopted by the City Council on July 6, 1949 is ultra vires.
Defendant subsequently filed a supplemental motion to quash based on practically the same grounds and he further pleaded, in the alternative, that in the event the Court held that “The Bus Ordinance of 1949” was authorized under the provisions of the charter of the City of Baton Rouge which empowered the City to regulate the operation of passenger busses for hire on its streets, then the said ordinance is unconstitutional in that it violates Section 2 of Article 1 of the Constitution of Louisiana and the Fourteenth amendment of the Federal Constitu *376 tion because, in conjunction with another ordinance of 1949 granting a franchise to the Baton Rouge Bus Company, it discriminates between individuals and denies the equal protection of law to- all.
The motions to quash were submitted to the Judge of the City Court on brief filed by both sides and were by him over-ruled for the reasons which he handed down in a written opinion. Counsel for defendant reserved a bill to the ruling of the court and the case was then set for trial. After trial the defendant was found guilty and sentenced to pay a fine of $10 and in default thereof, to spend 10 days in the city jail. He appealed to this court which is the prop^ er court vested with appellate jurisdiction in such cases-under Section 10 of Article 7 of the Constitution.
The case may be said to- be a sequel to that of State ex rel. Hutton v. City of Baton Rouge, 217 La. 857, 47 So.2d 665 in which this defendant sought to compel the city, by a writ of mandamus, to grant him a certificate of convenience and necessity under the very ordinance the legality o-r constitutionality of which he is presently attacking.
He had been engaged in the business of operating a passenger bus for hire over -certain designated roads, most of them leading out of and into the corporate limits of the c-ify as they existed prior to January 1, 1949. He was operating his bus under a certificate of convenience and necessity which had been granted to him by the city, apparently, under the provisions of Act 334 of 1946, which act had amended Act 169 of 1898, the act under which the city of Baton Rouge had been incorporated. His certificate was to expire on January 15, 1950 and he had made written application to the city for a certificate to continue the operation of' his bus but his application having never-been acted upon, he instituted the mandamus proceeding which finally came before'this-court on appeal from an adverse judgment.. As appears from the opinion it was held that he was not entitled to a certificate of convenience and necessity as a matter of right and because under the city ordinance in effect at the time, motor -busses could only be operated by one holding a franchise the court would not mandamus the city to-grant him a permit to operate such business. on a certificate of public convenience and necessity. As is to be observed further from the opinion, he did not plead the illegality or unconstitutionality of the ordinances involving the granting of franchises..
On application for rehearing, counsel for defendant stated that if the decision of this-court to the effect that the city was limited by the “Bus Ordinance of 1949” tp the-granting of a franchise only to- the operators of a bus line and was further restricted by the “Baton Rouge Bus Company Franchise Ordinance of 1949”, was permitted to-stand, he would later contend that those-ordinances were illegal and that very probably the question of their legality would, then be presented to the court in a subsequent proceeding. That probability became: *378 a reality in the present ’criminal prosecution against the defendant.
Counsel’s various contentions that the “Bus Ordinance of 1949” is invalid and illegal may well be summed up in the one that it exceeds the legislative authority granted to the City of Baton Rouge by the State Legislature. He still maintains that the city is limited in regulating the use of its public streets to the one requirement of a certificate of public convenience and necessity which, he argues, negatives the right or the power to grant a franchise. The City, on the other hand, contends that it derives its right and authority to grant franchises from Act 169 of 1898 of the State Legislature by which it was incorporated.
Section 20 of Act 169 of 1898 grants to the City Council of the City of Baton Rouge the power to enact all laws and ordinances for the general welfare of the corporation and its inhabitants. To that end the section further'provides that the Council has the power to pass ordinances for a great many purposes, among which is that “to authorize the use of the streets for telephone, telegraph and electric light lines for railroads operated by horse, electric, steam or other motive power, and for gas and water pipes and sewers; and to regulate the same; * * True, the word “franchise”' is not spelled out in the language quoted, but from language that is very similar in Act 20 of 1882, which is an act that incorporated the City of New Orleans, granting to the Commission Council full power to pass ordinances, the right of the city under such an ordinance to grant a “franchise” was recognized and upheld in the case of Forman v. New Orleans & Carrollton R. R. Co., 40 La.Ann. 446, 4 So. 246. See also Brown v. Duplessis and City of New Orleans, 14 La.Ann. 842, in which language of a similar import in a former charter of the City was construed as granting it the power and the authority to grant what amounted to- a franchise.
There is nothing in Act 334 of 1946 to justify the inference raised by counsel that any changes were made with regard to- the provisions of Section 20 of Act 169 of 1898. To the contrary, by the very terms of the Act of 1946, Section 20 of the former act was amended and re-enacted and it contains, among other grants to the city council the very same power with regard to the use of streets; the only change being the elimination o-f the word “ho-rse” used in connection with the operation of railroads and the addition of the words “or street railways’1’ after the word “railroads”. The additional grant o-f power to enact laws and ordinances to regulate the operation of taxi cabs, busses and other passenger vehicles for hire over the streets of the city and to require the operators of such vehicles to obtain from the Commission Council a certificate of convenience and necessity and to post adequate bonds or create trust funds to protect the public in case o-f damage, had no effect on the other power granted to pass ordinances authorizing the use of streets *380 for street railways operated by electric, steam, or any other motive power. As pointed out an the opinion in the mandamus suit previously referred to, the power to require certificates of convenience and necessity is largely discretionary with the Council and as far as the record in that •case revealed, and as far as the record in the present case shows, the Commission •Council never passed any ordinances to put the power thus granted to the City in effect. On the other hand, the Council, in pursuance of the powers to regulate the use of the streets for the operation of busses, did, ■on July 6, 1949, pass a very comprehensive ordinance which provides that no person, firm, corporation, or association of persons, shall transport persons for hire from one point or area to another, in the corporate limits of the City, without first having obtained from the Council a franchise or temporary permit therefor.
We hold, therefore, that the City •of Baton Rouge was vested with the power to enact laws and ordinances to grant franchises by the terms of Act 169 of 1898 by which it was incorporated and further by Act 334 of 1946 which amended and reenacted Section 20 of the Act of 1898 and that the enactment of the “Bus Ordinance •of 1949” on July 6 of that year was a valid •exercise of such power and was not ultra vires.
Since counsel for defendant concedes that if the City has the power to grant, it •also has the power to refuse a franchise, that would seem to dispose of the issue that is presented in the case unless the alternative plea that the “Bus Ordinance of 1949” in conjunction with the “Baton Rouge Bus Company Franchise of 1949” is unconstitutional should be found to be valid.
The basis on which the plea rests is that the ordinance unwarrantedly and unlawfully discriminated between the Baton Rouge Bus Company and others who are in a like situation. Undoubtedly if that were so the ordinance would be vulnerable to the attack that is made on it. However when 'we look into the facts, conditions and circumstances existing at the time of, and the reasons for its adoption, we find that the Council wisely exercised its discretion under the police power with which it is vested.
We are informed by brief of counsel representing the City, and it is not disputed by counsel for defendant, that after the extension of the city limits in 1949, the City Council found itself faced with a serious traffic problem to which it had to and did give careful consideration. Before acting on it, however, the Council appointed a committee of citizens having knowledge of such matters to help out in the situation. Public hearings were held to determine the wisest course to follow and it was only after all of this had taken place that the Ordinance was finally adopted. All of this is, to some extent, reflected in the preamble to the ordinance wherein it is shown that because the multiple bus system of opera *382 tions which' arose in the City out of the exigencies of World War II was unsound economically and had left bus transportation in a chaotic condition, it was found that the public convenience, safety and welfare required a single, integrated and co-ordinated system and to that end it was deemed advisable that the franchise of the Baton Rouge Bus Company be recognized, ratified and extended.
The ordinance, as we understand, does not purport to grant an exclusive franchise to that Company. All that is indicated by the bus ordinance is that no additional franchise for the transportation of passengers by bus for hire shall be granted “at this time” or “within the near future.” It may develop that the chaotic condition which forced the City Council to resort to the one integrated system of bus transportation will disappear at some future date and an entire different system will be adopted. For the present, however, the Council, in the light of all the information it had before it, acted in the manner it thought would best redound to the convenience, safety and welfare of the public. The use it made of its discretion cannot be said to have been arbitrary and capricious.
We do not deem it necessary to discuss the cases cited by counsel for defendant as we find none of them to be apposite to the situation presented in this case. Most of them involved ordinances in which the power to discriminate in favor of or against certain persons was vested in some commission or department or in an officer.
It is significant that in one of the cases, City of New Orleans v. Badie, 146 La. 550, 83 So. 826, 827, the court recognized the fact that the City, through its Council, is vested with control over its streets and may make reasonable regulations for their use in whatever way it chooses and is simply precluded from exercising that power, “which it holds in trust for the people at large”, in an arbitrary and discriminatory manner.
The City Judge correctly ruled on and decided the pleas and issues presented in the case and 'for the reasons herein stated, the conviction and sentence are hereby affirmed.