AYRES, Judge.
The object of this action is to have decreed null and void Ordinance No. 1212 of the City of West Monroe which prohibits-parking of all types of vehicles or things on Cypress Street between its intersections, with North Seventh Street and with Bridge Street, and on Bridge Street from the new traffic bridge on the Ouachita River and the street’s intersection with Cypress Street, as-well as on the east side of Cypress Street between its intersection with Natchitoches- and Bridge Streets.
The plaintiffs are eight owners of businesses located on property abutting and fronting on Cypress Street, within the zone in which parking has been prohibited by the aforesaid ordinance. The ordinance is attacked a9 an unreasonable, arbitrary and unfair regulation of traffic, the enforcement of which would be injurious to petitioners and others similarly situated, and would impair their property rights. Additionally, it was contended that the ordinance violates Article 1, Section 2, of the Louisiana Constitution — LSA providing that no person shall be deprived of life, liberty or property, except by due process of law.
In an answer to a rule for a preliminary injunction against the enforcement of the provisions of said ordinance, the defendant City denied ‘that the ordinance was unreasonable, unfair or arbitrary or that its enforcement would be oppressive, and alleged that, due to the great and constantly increasing volume of traffic on this street, which, as a part of U. S. Highway 80, formed a main thoroughfare, the enactment and enforcement of the ordinance, in the interest of public safety, convenience and welfare, was not only imperative but a proper and valid exercise of its police power.
Defendant’s contentions were upheld by the trial court, and from a judgment denying a preliminary injunction, plaintiffs have appealed.
*345 The facts, as established by the record, are not seriously disputed, and may be briefly stated. Cypress Street runs in a .■general northwest and southeast -course from Wood Street to its intersection- with North Seventh Street. Between Wood and Bridge Streets, Cypress is of the usual type •of a two-lane street. Continuing from Bridge Street to North Seventh Street, it is a four-lane thoroughfare having a width •of- 40 feet. Bridge Street, only two blocks in length, is likewise a four-lane street with a width of 47 feet. Bridge and Cypress-Streets, for a distance .of approximately -one and one-half miles, constitute a portion of U. S. Highway 80.
Important in the determination of the reasonableness vel non of the ordinance is-the volume of traffic on that portion of the street and/or highway where parking is prohibited. The evidence adduced on the trial showed that in. 19S0, at the east end of-Bridge Street, the traffic volume was 18,070 vehicles every 24 hours; 19,600 daily in December, 1953, and 21,000 daily in Féb-ruary, 1955; that on Cypress Street, between Crosley and Vernon Streets, in the ■second block northwest of the intersection ■of Bridge and Cypress Streets, in 1950 the daily traffic volume was 11,170, which, in February, 1955, had increased to 13,260 vehicles daily; that immediately beyond the •intersection of Cypress and North Seventh Streets and just beyond the northwest end ■of the four-lane thoroughfare, the daily traffic count in' 1950 was 7,530; in December, 1953, 8,220, and in 1954, 9,370.
On May 10 and 11, 1955, a Tuesday and .a Wednesday, covering two periods of 24 hours each, an hourly count of the traffic volume was made at two points on Cypress Street, the first, between Vernon and Cros-ley Streets in the second block beyond the ■intersection of Bridge and Cypress Streets, .and the second, between Travis and Drago Streets, a point approximately midway between . the approach to the new traffic 'bridge and North Seventh Street; At the -first of these locations, on May 10, the ve-hide count for the 24-hour period was 14,-409 and on May 11, 14,421. At the second point, the count on May 10 was 13,310 and on May 11, 13,666. At the first of these points, the tabulation showed that between 6:00 o’clock A.M. and 8:00 o’clock P.M. the traffic count ranged from 692 vehicles to 1,148 per hour, and at the second point the count between the same hours ranged from 574 to 1,049 vehicles per hour.
The first of these tabulations shows there has been a general and constant increase in volume of traffic on this street. Before undertaking the widening of this street, it was concluded by the Department of Highways that, in' order to properly expedite traffic through this area, a four-lane highway or thoroughfare was required. To permit the parking of vehicles on each side of this highway would be to reduce a four-lane highway to a fwo-lane highway and return to the conditions as existed prior to the widening of this highway. The traffic analyst of the Department of Highways testified that the highways were planned to expedite traffic and not for parking purposes.
The hourly computation of traffic herein-above referred to shows that, during normal -business hours ai either location, the traffic count was- never less than 669 vehicles per hour and ranged to as many as 1,148 per hour, or, ranged from an average of one vehicle approximately every 5Yz seconds to one vehicle during every three seconds, or, from an average of one vehicle every 22 seconds in each of the four lanes to one vehicle every 12 seconds "in each lane. Therefore, if the traffic were confined to only two lanes, as would result from parking on both sides of the street, as sought by plaintiffs, the average would range for each lane, or for each direction, from one vehicle every eleven seconds to one for every six seconds, not excluding stoppage for signal lights. From this it was reasonable to conclude some provision was necessary- to relieve the traffic congestion. existing at the time and as was constantly increasing.'-
*346 Moreover, the record discloses that a vast percentage of the traffic accidents in the City of West Monroe occurred on the streets wherein parking is prohibited by this ordinance. The minimizing of such accidents is sufficient to motivate the Council in the enactment of the ordinance under attack.
It is conceded, and correctly, so, that a municipality may, under its police power, regulate in a reasonable manner vehicular traffic on its streets. For instance, in City of Shreveport v. Breazeale, 191 La. 1088, 187 So. 33, 34, in construing an ordinance regulating the operation of vehicles transporting persons for hire, where it had been charged that the ordinance deprived defendant of his property without due process of law, in violation of Art. 1, Sec. 2, (the Bill of Rights) of the Louisiana Constitution, as well as the Fourteenth Amendment to the Constitution of the United States, it was stated:
“There is no merit in these attacks. That a municipal corporation may, under it police power, regulate in a reasonable manner vehicular traffic on its streets is well settled by the jurisprudence of this country. It has been so held by every court, so far as we know, which has spoken on the subject.”
It was also said in City of New Orleans v. Schick, 167 La. 674, 120 So. 47, 49:
“The police power, as generally defined, extends to the protection of the lives, health, and property of the citizens, and to the preservation of good order and the public morals. The entire property and business within the local jurisdiction of the several states is within its control. The pursuit of any lawful trade or business may be subjected to reasonable regulations under the police power of the state, for the protection of the public health or safety, and the courts will interfere with the action of the local legislative authority only when it is plain and palpable that such action has no real' or substantial relation to the public health, or safety, or to the general welfare.”
That a city, through its governing authority, is vested with control over its-streets and may make reasonable regulations for their use, and is only precluded' from exercising that power in an arbitrary and discriminatory manner, has been recognized by the courts. City of New Orleans v. Badie, 146 La. 550, 83 So. 826, 827; City of Baton Rouge v. Hutton, 218 La. 371, 49 So.2d 613, 616.
It has likewise been held that the legitimate exercise of the police power is-not subject to restraint by constitutional' provisions for the general protection of the-rights of individual life, liberty and property. State v. Schlemmer, 42 La.Ann. 1166, 8 So. 307, 10 L.R.A. 135; City of New Orleans v. Schick, supra.
Due process of law and the equal protection of the law are had when the laws-affect alike all persons similarly situated. State ex rel. Civello v. City of New Orleans, infra, and the authorities therein cited. Archer v. City of Shreveport, La.App., 85 So.2d 337.
While reference has been made to the heavy traffic load borne by this segment of the highway upon which the ordinance prohibits parking of all kinds of vehicles or things, evidence of which was-introduced to substantiate the City’s contention that such facts warranted, justified and required such prohibition of parking, it is not necessary for the validity of the ordinance that we should deem the ordinance justified by consideration of public health, safety, comfort or the general welfare; it is sufficient that the municipal council could reasonably have had such consideration in mind, in which event, we must assume that, if such considerations could have justified the enactment, they did so justify it. State ex rel. Civello v. City of New Orleans, *347 154 La. 271, 282, 97 So. 440, 444, 33 A.L.R. 260. However, if the City’s governing authority deemed any substantial reason sufficient for the adoption of the ordinance, it is not the province of the courts to take issue with the council and substitute its judgment for that of the City’s governing authority. Archer v. City of Shreveport, supra; State ex rel. Civello v. City of New Orleans, supra.
In the Civello case, the court stated:
“If the municipal council deemed any of the reasons which have been suggested, or any other substantial reason, a sufficient reason for adopting the ordinance in question, it is not the province of the courts to take issue with the council. We have nothing to do with the question of the wisdom or good policy of municipal ordinances. If they are not satisfying to a majority of the citizens, their recourse is to the ballot — not the courts.”
See also City of New Orleans v. Schick, supra, 167 La. 674, 120 So. 47, 50, wherein the principle was further emphasized. It was there stated:
“It belongs to the legislative branch of the government to exert what are known as the police powers of the state and to determine, primarily, what measures are appropriate or needful for the protection of the public morals, health, or safety, * * *. Jacobson v. [Commonwealth of] Massachusetts, 197 U.S. 11, 26, 25 S. Ct. 358, 49 L.Ed. [643] 649, 3 Ann.Cas. 765; Garrett v. Aby, 47 La.Ann. 618, 630, 17 So. 238.”
We are concerned as a court only with the question as to whether the City’s governing authority, as a body, acted within the legitimate scope of the police power delegated to the City of West Monroe or whether such action was unreasonable, arbitrary and oppressive. This question must be determined by the provisions contained in the ordinance itself, with due regard to the traffic situation and to the public safety, convenience and welfare. In giving consideration to the reasons advanced as justifying the adoption of the ordinance, particularly in view of the traffic load on the street during all hours of a normal business day, and in applying the aforesaid principles, we find nothing in the ordinance or its enforcement that is unreasonable or arbitrary, and consequently no manifest error in the conclusions reached by the trial court that the ordinance affords a reasonable regulation of traffic in the interest of safety.
Plaintiffs, however, contend that as owners of the property abutting this street and upon which they reside and/or operate their businesses, they have been deprived of their rights to the street as well as have their customers and/or their friends and neighbors. These rights, such as are not common to the public in general, are the rights of access of view, of light and of air and of lateral support. Plaintiffs, by the adoption of the aforesaid ordinance, have not been deprived of these or any similar rights, all of which, however, are subordinate to the right of passage in the public.
39 C.J.S. Highways § 141, pp. 1080-1081, states the general rule:
“The rights of abutting owners are subordinate to the right of the public to proper use of the highway. Thus .the exercise of the rights of abutting owners is subject to reasonable regulation and restriction for the purpose of providing reasonably safe passage for the public; but regulations or limitations can not be sustained which unduly delimit or unreasonably intermed-dle with the rights of the abutting owners. The mere disturbance of the rights of the abutting owners by the imposition of new uses on the highway consistent with highway purposes must be tolerated.”
*348 The streets of the cities and towns in Louisiana are classified among the things that are “public” and “for the common use”; no individual, as a general rule, can have a property right in such use for the purposes of his private business. City of New Orleans v. Calamari, 150 La. 737, 91 So. 172, 22 A.L.R. 106.
Moreover, the record discloses that the problem of parking on this street within the limits prescribed by the ordinance has been generally recognized by a great majority of the owners of the businesses concerned, who have made provisions for off-street parking or by parking on intersecting streets.
Plaintiffs have cited for consideration authorities from other jurisdictions. Among these is the case of City of Cleveland v. Antonio, 124 N.E.2d 846, from the Court of Appeals of the State of Ohio, wherein defendant had been charged and convicted of operating a commercial vehicle of more than four tons gross weight over a street where such operation was prohibited between the hours of 10:00 o’clock P.M. and 6:00 o’clock A.M. Defendant’s employer’s factory was located on a dead-end street and the effect of this ordinance was to deprive defendant during the prohibited hours of all means of access by commercial vehicles to his property, as the prohibition applied to all streets over which defendant’s factory could be reached. Another case is Morris v. City of Salem, Or., 174 P.2d 192, which was an action directed towards the prevention of the installation of parking meters in the City of Salem, State of Oregon. These cases are, therefore, easily distinguished on the facts from the instant case.
Additionally cited were the cases of Blumenthal v. City of Cheyenne, Wyo., 186 P.2d 556, and Haggenjos v. City of Chicago, 336 Ill. 573, 168 N.E. 661, 663, on the proposition that prohibition is not regulation and the power to regulate does not include the power to prohibit in the sense of absolute prohibition. The ordinance attacked in the first of these cases established a truck route through the City of Cheyenne in the State of Wyoming, as-apparently is the common practice in many cities and towns throughout the country. While the court declared that the power to regulate did not carry the power to-prohibit, yet it recognized that regulation was, at least, a partial prohibition and the ordinance was upheld as a valid “regulation” and not an invalid “prohibition”, even, though the ordinance prohibited the use of' certain streets by trucks at all times.. Neither do we think the second of these-cases supports wholly the proposition for which it was cited. The ordinance there-concerned not only prohibited parking on a. particular street but on all streets in a. prescribed section of the city covering an area of a half mile square. No comparable situation was encompassed in the ordinance-of West Monroe. The court nevertheless there recognized that under certain conditions the prohibition of parking absolutely had been upheld as a valid regulation, for it stated:
“Ordinances prohibiting the parking of vehicles in certain restricted localities between certain hours, or at all times, or limiting the parking privilege to an hour, to 30 minutes, to 20 minutes, are common, and have been sustained. Pugh v. City of Des Moines, 176 Iowa 593, 156 N.W. 892, L.R.A. 1917F, 345; Commonwealth v. Fenton, 139 Mass. 195, 29 N.E. 653; Taylor v. Roberts, 84 Fla. 654, 94 So. 874; Veneman v. Jones, 118 Ind. 41, 20 N.E. 644, 10 Am.St.Rep. 100.” (Emphasis supplied.)
While the case from which the above-quotation is taken would apparently lend some support to plaintiffs’ position, we do-not think the conclusions reached there are-controlling here. The instant case is governed by our own laws and jurisprudence.. Another distinguishing feature in the instant case is that Cypress and Bridge-Streets, where parking is prohibited, constitute a part of a national thoroughfare.
*349 While plaintiffs are recognized as having rights as owners of property abutting the street and highway and of the businesses located thereon, such as access, or. the right of ingress and egress, and similar rights, none of which have they been deprived or unduly restricted in the exercise of, the primary use of this thoroughfare is for the purpose of travel, which right is primarily in the public. Plaintiffs’ rights, being subordinate, are subject to reasonable regulation.
Under the established facts, we are unable to conclude that the ordinance is unreasonable, arbitrary, unjust or oppressive or that it violates Art. 1, Sec. 2, ■ of the Louisiana Constitution. As it has not been shown that the ordinance was unreasonable or arbitrary, the conclusion necessarily follows that the validity of the ordinance should be upheld.
Accordingly, the judgment appealed is affirmed at appellants’ cost.
Affirmed.