Charles C. MacLean, Jr., J.
These cases have been brought by the village police for the purpose of determining whether the defendant Richard Scudder and various boatmen to whom he has leased moorings in Lloyd Harbor have violated the village ordinance regulating parking by leaving their automobiles at the side of West Neck Road in the vicinity of Mr. Scudder’s residence. The defendants Brooks and Gregson are among such boatmen. The defendants have interposed several defenses, some of which raise questions of a novel character.
Section 1 of Ordinance No. 2 of the Village of Lloyd Harbor provides: “ No person shall leave any vehicle standing or parked, nor shall any person picnic or trespass upon any portion of the public streets, highways, roads, lanes or other public places in the Village of Lloyd Harbor, except such as may be necessary or incidental to the transaction of business with or visits to residents of the Village or such is may be due to accidental or temporary disability.”
Mr. Scudder resides on Lloyd Neck, on a narrow parcel of land bounded on the north by West Neck Road and on the south by Lloyd Harbor. The land slopes off sharply from West Neck Road to the water’s edge. Mr. Scudder has occupied the premises for more than 30 years, first as a tenant of the late Marshall Field, Jr., and in recent years as a tenant at will of Mrs. Field. Mr. Scudder engages in clamming in Lloyd Harbor. That harbor is a body of water opening off Huntington Bay and situated within the limits of the village.
Prior to 1954, Mr. Scudder conducted a boat livery at his residence. His customers parked their automobiles in an area on the south side of West Neck Road and east of his driveway. In 1954, the village authorities closed that area to parking by erecting a fence along the edge of the highway for a distance of 400 feet, posting “ No Parking ” signs along the fence, and enforcing the village ordinance against any who parked there. *616 The effect of these actions, according to the testimony, was to close down Mr. Scudder’s boat- livery business.
Now it appears that Mr. Scudder is developing a new business at this location consisting of leasing moorings, made up of an anchor, chain, and suitable float, that he has put down in Lloyd Harbor channel off his place. As rental for the moorings, Mr. Scudder charges owners of pleasure boats a flat amount for the season. The lease arrangement includes protection of the boat owner’s property and the right to leave a dinghy at Mr. Scudder’s landing or beach for use as a ferry between shore and boat. Until last year, Mr. Scudder had only three lessees of his moorings. Last year the number increased to five, and this year, to seven. While Mr. Scudder’s patrons were few in number, it appears that they parked in a small area which is off the paved portion of West Neck Road but within the public right of way. This area is located west of Mr. Scudder’s driveway and directly behind his residence. It consists of a clearing in woods growing on the public right of way. Mr. Scudder testified that this area, in which there is space for three cars to park perpendicularly to the road, has been used by him as a parking place for 30 years. When the clearing behind Mr. Scudder’s place was no longer able to accommodate all the boatmen, it appears that some of them and their guests began to park east of his driveway, at the place where the village had erected the fence in 1954. This conduct has resulted in the village police issuing summonses, not only in ordinary course for parking along the fence, but also for parking in the clearing behind Mr. Scudder’s residence.
West Neck Road is the main street of the village. The road consists of a right of way 50 feet wide. The paved portion is 16 feet wide, leaving an area 17 feet wide on each side of the pavement. The evidence shows that the defendants’ automobiles were parked on the south side of the highway, at distances from the pavement ranging from about 4 feet to 12 feet — all within the 50-foot right of way.
There is no dispute that, at the times in question, the defendants did in fact park within the boundaries of the road. All the defendants, however, challenge the right of the village to make and enforce its ordinance regulating parking and the defendants other than Mr. Scudder also claim the benefit of the exceptions made by the ordinance with respect to the transaction of business with or visits to residents of the village.
*617 I
A. The first defense that is common to all the defendants is the claim that they did not park their automobiles on any part of West Neck Road that is “ intended for vehicular traffic ” and that the village is authorized by the Legislature to prohibit parking only on the portions of its roads that are intended for such traffic. Whether this contention would have merit under the provisions of the Vehicle and Traffic Law in effect prior to July 1, 1958, is doubtful.* Clearly it is without merit under the general revision of that law made by chapter 698 of the Laws of 1957, effective July 1, 1958. Section 1640 of the Vehicle and Traffic Law, as so amended, provides: “ (a) The legislative body of any city or village, with respect to highways (which term for the purposes of this section shall include private roads open to public motor vehicle traffic) in such city or village * * * may by local law, ordinance, order, rule or regulation: * * * 6. Prohibit, restrict or limit the stopping, standing or parking of vehicles.” The term “highway” is defined by section 118 of the same law as: “ The entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel.” The term “parking” is defined in section 129 of the same law as: “ * * * the standing of a vehicle, whether occupied or not, otherwise than temporarily for the purpose of and while actually engaged in loading or unloading merchandise or passengers.” Section 2002 of the Vehicle and Traffic Law makes it plain that local ordinances that were in effect on July 1, 1958 are to be construed as if they had been adopted pursuant to the new statutory provisions.
It is clear, therefore, that the village is authorized by the State to prohibit, restrict or limit parking on all roads of the village and that the village ordinance validly extends not only to parking on the travelled portions of such roads but also to “ the entire width between the boundary lines ” of every such road.
B. The defendants further contend that even if the village ordinance is otherwise valid, it is not enforcible because ‘ ‘ the *618 prohibition against parking is not clearly and suitably marked by the Village ”.* Section 1683 of the Vehicle and Traffic Law provides that no ordinance or regulation made by local authorities under the powers conferred by the statute “ shall be effective until signs or markings giving notice thereof are posted ’ ’, if the effect of the ordinance or regulation is, among other things, to “ [p]rohibit, restrict or limit the stopping, standing or parking of vehicles.” If the requirements of this section were not satisfied, the village ordinance would not be enforcible even against persons having actual notice thereof. (People v. Evans, 205 Misc. 886 [1954], a case in which the municipality had failed to post any “ No Parking ” signs.)
The record shows that signs measuring four feet by one foot are conspicuously posted at the side of each of the four roads entering the village, reading as follows: “ No Parking on Any Street in This Village ’ \ The record further shows that additional signs are posted at points along the village roads, reading: “No Parking Any Time ” and, in particular, that five signs of this type are posted along West Neck Road in the vicinity of Mr. Seudder’s residence. We think that the signs the village has posted are more than sufficient to give notice of the ordinance as required by section 1683. (Cf. People v. Burmann, 307 N. Y. 871 [1954]; People v. Hirshon, 43 N. Y. S. 2d 764 [1943]; People v. Space, 182 Misc. 783 [1944].) We see no basis whatever for the defendants ’ contention that so-called ‘ ‘ signs of general prohibition, ’ ’ that is, signs announcing that no parking is allowed on any street in the village, are required to be posted at an indefinite number of spots along the village roads as well as at the various entrances to the village.
C. The third contention made by the defendants, and the final one by Mr. Seudder, is that the ordinance “is an unconstitutional exercise of the village police authority ”. Mr. Seudder testified that, in his opinion, the parking in which the other defendants had engaged was “ necessary in the proper conduct ” of his mooring business and that it would be “ impossible ” for him to carry on that business if he were prevented from park *619 ing in the area behind his residence where he has parked for 30 years. Mr. Scudder contends that the ordinance is invalid because it would deprive him “ of his living, his constitutional guarantee, and more specifically the question where he is to park (The record contains no clue as to why the driveway on Mr. Scudder’s premises does not afford a suitable place to park.)
We need not stop to comment either on the fact that the other defendants could not avoid the application of the ordinance to them merely because it interfered unreasonably with certain fundamental rights of Mr. Scudder, or the further fact that, irrespective of the parking ordinance, Mr. Scudder’s mooring business may be terminated at any time by the enforcement of the village zoning ordinance.*
No evidence was offered by any of the defendants tending to establish that the ordinance is an unreasonable, arbitrary, capricious or discriminatory exercise of the power granted the village by section 1640 (subd. 2, par. 6) of the Vehicle and Traffic Law, to prohibit, restrict or limit the parking of vehicles within the village. We do not see how, in the absence of such evidence, the proposition can be maintained that the ordinance offends the due process clause or, stated otherwise, that it “ passes the bounds of reason and assumes the character of a merely arbitrary fiat ”. (Town of Islip v. Summers C. & L. Co., 257 N. Y. 167, 169 [1931].) On the contrary, in view of the residential character of the village, its 16-foot roadways, and its proximity to large urban centers, we think that the ordinance here under consideration could have been enacted in the reasonable belief that it forwarded such objectives as the free movement of traffic, the elimination of danger and, in general, the preservation of good order and the public morals. That is enough to require us to sustain the ordinance. As the Supreme Court of the United States said in Railway Express Agency v. New York (336 U. S. 106,109 [1949]): “ We would be trespassing on one of the most intensely local and specialized of all municipal problems if we held that this regulation had no relation to the traffic problem of [the village]. It is the judgment of the local authorities that it does have such a relation. And nothing has been advanced *620 which shows that to be palpably false.” (See People v. Rubin, 284 N. Y. 392, 395 [1940].)*
We hold, therefore, that the defendants, as members of the public, have no just complaint against the terms of the ordinance. Moreover, we think that Mr. Scudder has no special grounds for complaint. The principle has long been established that the occupant of premises abutting a public road has no greater right than anyone else to park in that road. Thus, in King v. Russell (6 East 427 [1805]) in which a wagoner was prosecuted for occupying one side of the public street before his warehouse for loading and unloading his wagons, the court said (p. 430) that “* * * it should be fully understood that the defendant could not legally carry on any part of Ms business in the public street to the annoyance of the public. That the primary object of the street was for the free passage of the public, and any thing which impeded that free passage, without necessity, was a nuisance. That if the nature of the defendant’s business were such as to require the loading and unloading of so many more of his waggons than could conveniently be contained within Ms own private premises, he must either enlarge his premises, or remove his business to some more convenient spot.” Again, in Rex v. Jones (3 Camp. N. P. 229 [1812]), the court said that a party may not “ eke out the inconvenience of his own premises by taking in the public highway * * These cases were followed by our Court of Appeals in Cohen v. Mayor (113 N. Y. 532 [1889]), where the court said (p. 536) regarding a grocer who kept Ms wagon day and night in the street in front of his store: “ The highway may be a convenient place for the owner of carriages to keep them in, but the law, looking to the convenience of the greater number, prohibits any such use of the public streets.” (See, also, Callanan v. Gilman, 107 N. Y. 360 [1887] and Jones Beach Blvd. Estate v. Moses, 268 N. Y. 362 [1935].) More recently, in the leading case of Gilsey Bldgs. v. Incorporated Vil. of Great Neck Plaza (170 Misc. 945 [Sup. Ct. Nassau County 1939], affd. 258 App. Div. 901 [2d Dept. 1939]) Mr. Justice Fboessel (now a member of the Court of Appeals) dismissed the complaint of an abutting owner against the installation of parking meters in the street in front of his premises, saying (p. 951): “ So far as plaintiff’s right *621 to ‘ park ’ in front of its oavu premises is concerned, it is in no more favorable situation than any other member of the public at large. ‘ The plaintiff, once upon the highway, is treated no differently than is any other member of the traveling public. ’ (Jones Beach Boulevard Estate v. Moses, supra; Rex v. Russell, supra.) ”
The fact that, for many years, Mr. Scudder has been leaving his car on the roadside near his residence could not, of course, create in him, a right to continue to do so. No principle of law is better established than that laches is not available as a defense to an action brought to enforce the rights of the public. (Village of North Pelham v. Ohliger, 216 App. Div. 728 [2d Dept. 1926], affd. 245 N. Y. 593 [1927]; People v. Giorgi, 16 N. Y. S. 2d 923 [1939].) This principle has long been applied by the courts to defeat claims by individuals to prescriptive rights in public highways. Thus, in Bex v. Cross (3 Camp. N. P. 224 [1812]) Lord Ellehbobottgh, in holding that an owner of stagecoaches had no right to keep them overnight in a public street, said (p. 227): ‘ ‘ But every unauthorized obstruction of a highway to the annoyance of the King’s subjects, is an indictable offense. * * * It is immaterial how long the practice may have prevailed, for no length of time will legitimate a nuisance. * * * No one can make a stable-yard of the king’s highway.”
II
There remains to discuss the claim by the defendants other than Mr. Scudder to the benefit of the exception made in the ordinance for parking that is “necessary or incidental to the transaction of business with or visits to residents of the village ”. Each of such defendants testified on direct examination that on the occasions in question they ‘ ‘ visited with ’ ’ Mr. Scudder. Further examination brought out, however, that they had visited with Mr. Scudder only in the sense that they had “ talked and passed the time of day ’ ’ with him on their way to or from the moored boats. Mr. Brooks admitted as much, and he was frank to say that on the date referred to in the information against .him he “was visiting Mr. Scudder’s premises for the purpose of using my boat,” and that he had talked with Mr. Scudder only “very briefly as I went up to the landing”. Mr. Gregson testified that ‘1 on occasion ’ ’ he had visited Mr. Scudder “specifically for the purpose of a social visit” but that July 8, 1959, the date referred to in the first information against him, was not such an occasion. Mr. Gregson further testified that his visit on July 12, 1959, the date referred to in the second information against him, ‘1 was for the purpose of *622 using my boat Mrs. Sparks, the remaining defendant, testified that she saw Mr. Scudder “ briefly ” on July 12, 1959, the date referred to in the information against her, before she “ went out to the boat with Mr. and Mrs. Gregson as their guest. ’ ’
It seems evident that the exception made in the village ordinance for parking that is necessary or incidental to visits “ to ” residents of the village is intended to refer to visits made for the purpose of seeing a resident of the village, paying a call upon him, or becoming his guest. Obviously, none of the other defendants went to Mr. Scudder’s residence on the occasions in question for any such purpose. In short, they did not ‘1 go to see ’ ’ him. They were there to go out on their boats or, in Mrs. Sparks’ ease, the Gregson boat. Doubtless, they would have gone out on the boats whether or not Mr. Scudder was home at the time. The fact that they happened to see and talk with him on these particular occasions is, therefore, quite without significance so far as the present charges are concerned.
The defendants' argue that if they are not within the exception in the ordinance for visits to residents of the village, they are within the clause excepting parking that, is ‘ ‘ necessary or incidental to the transaction of business with * * * residents of the Village.” They maintain that, in passing upon this defense, the court should not concern itself with the question whether Mr. Scudder’s mooring business violates the village zoning ordinance. We do not reach that question because we find that the record shows quite clearly that the boat.owners had completed their 1 ‘ transaction of business ’ ’ with Mr. Scudder when they had entered into the leases of their moorings, and that when they went to Mr. Scudder’s place at the times in question, they did so not for the purpose of transacting business with him but exercising their rights as lessees. To illustrate, if one were to lease his field to a farmer, the farmer would not come to transact business with the lessor when he came to work the field. Bather, when working the field, the farmer would merely be exercising a right that the lessor might have exercised if he had not made the lease of the field. In that case, therefore, if the farmer were to park his car in the highway by the field, the ordinance should be applicable to him in the same way that it would have applied to his lessor if he had parked his car in that location.
This analysis would seem to place the cases against Mr. Brooks and Mr. Gregson on the same footing as the case against Mr. Scudder. It suggests, however, that Mrs. Sparks has a good defense to the charge against her. As stated, she parked *623 her car as an incident to a visit to Mr. and Mrs. Gregson. She could reasonably assume that the Gregsons, as lessees of Mr. Scudder, were rightfully enjoying a portion óf his rights as a tenant of Mrs. Field. Under these circumstances, Mrs. Sparks would seem entitled, as a guest of the Gregsons, to the same privileges that the parking ordinance would accord a guest of Mr. Scudder or of any other resident of the village.
The motions to dismiss made on behalf of Messrs. Scudder, Brooks and Gregson will be denied. The court finds them guilty as charged. The complaint against Mrs. Sparks will be dismissed.

 The argument is based upon the provisions of former section 2. of the Vehicle and Traffic Law, paragraph (3) of which defined “street” to “include that part of the public highway intended for vehicular travel.” That section, however, was repealed by chapter 698 of the Laws of 1957, effective July 1, 1958. Moreover, a like contention was rejected in La Rue v. Tiernan, 260 App. Div. 337 (3d Dept. 1940), affd. without opinion 285 N. Y. 550 (1941).

 The defendants rely on former subdivision 1 of section 86 of the Vehicle and Traffic Law, which required that zones in which parking was prohibited “ be marked and indicated by suitable signs,” and on subdivision 4 of section 90 of that law, which required that villages of the first class (of which Lloyd Harbor Village is not one) post “proper notices” of parking regulations “ conspicuously in the highways to which such regulations apply.” These provisions, however, .were repealed by chapter 698 of the Laws of 1957, as were like provisions of section 54 of the Vehicle and Traffic Law. The subject matter thereof is now covered by section 1683 of the Vehicle and Traffic Law, effective July 1, 1958, discussed in the text.

 The court takes judicial notice (pursuant to Civ. Prae. Act, § 344-a, subd. 3) of the Village Building Zone Ordinance. It zones the entire area of the village, with the exception of a parcel of beach, as a “ Residence A-l District ” in which no building or premises may be used except as a “ single family detached principal dwelling ” and for certain other purposes, none of which are relevant here but which include such “ customarily incidental or accessory ” uses as farming, horticulture, oystering and clamming, and various home occupations.

 “ Even if the validity of the regulation were ‘ fairly debatable ’ * * ‘ the legislative judgment must be allowed to control ’ (Village of Euclid v. Ambler Realty Co., 272 U. S. 365, 388).” (Levitt v. Incorporated Village of Sands Point, 6 N Y 2d 269, 273 [1959].) See, also, People v. Lang, 106 N. Y. S. 2d 829 (Sup. Ct., Nassau County, 1951); Scott v. City of West Monroe, 95 So. 2d 343 (Ct. App. La. 1957).