Thomas C. Platt,
Acting Police Justice. The informations in these three cases charge the defendants with violating section 1 of Ordinance No. 2 of the Village of Lloyd Harbor, in that they illegally parked their automobiles on the south side of West Neck Road in the village in the vicinity of the defendant Scudder’s residence.
Section 1 of Ordinance No. 2 provides as follows: “ No person shall leave any vehicle standing or parked, nor shall any person picnic or trespass upon any portion of the public streets, highways, roads, lanes or other public places in the Village of Lloyd Harbor, except such as may be necessary or incidental to the transaction of business with or visits to residents of the Village or such as may be due to accidental or temporary disability. ’ ’
The informations were originally tried before Police Justice Charles C. MacLean, Jr., on October 3, 1959, who found each of the defendants guilty as charged and imposed fines, all of which have been paid and none of which (according to the defendants) have been refunded.
Defendants appealed to the County Court (Tasker, J.) which reversed the judgments of conviction on the ground that the defendants were not accorded a fair trial in that there was no *915 District Attorney nor any appropriately deputized assistant present to prosecute the People’s case and in the absence thereof the prosecution had been undertaken by the court. In its opinion and by its order made and entered May 22, 1961, the County Court directed that the case be retried before the Acting Police Justice of the village. A retrial was accordingly held on June 23, 1961 and the People were represented by an Assistant District Attorney designated by the District Attorney of Suffolk County. The cases were consolidated for the purpose of the retrial on the motion of counsel for the defendants.
Two village policemen testified for the People and the testimony of a third policeman on the prior trial was read into the record by the People (without objection by the defendants), the third policeman being outside of the jurisdiction. (Code Grim. Pro., § 8, subd. 3.)
The record shows that the three defendants, on the dates charged in July of 1959, parked their automobiles within 25 feet of the center line of the paved portion of the highway; namely, on the south side of West Neck Road within the Village of Lloyd Harbor. The record also shows that there were at least five “ No Parking At Any Time ” signs in the immediate vicinity of defendant Scudder’s residence clearly visible to anyone using the highway on the dates in question and further that there were signs at each of the four entrances to the village, which signs stated “ No Parking on Any Street in this Village ”.
The testimony established that the defendant Scudder lived, and had resided for a number of years, on a plot of land on Lloyd Neck immediately to the south of West Neck Road and to the north of Lloyd Harbor and that this land was immediately adjacent to the place where the alleged violations occurred. He testified that he lived there as a permittee of the late Marshall Field and thereafter of Mr. Field’s widow.
In April of 1959 the defendant Scudder set out moorings and entered into agreements with the defendants Brooks and Grregson whereby they might, during the forthcoming boating season, use his float and such moorings for their boats for a flat fee or rent. It is undisputed that the negotiations and agreements for such privilege with both such defendants took place and were completed in April of 1959.
At the conclusion of the trial the defendants’ counsel urged acquittal on five grounds, viz.:
1. The ordinance is unreasonable, arbitrary and capricious and the issuance of tickets under the facts in this case was an unconstitutional exercise of police authority;
*916 2. The application of the ordinance under the facts of this case violates section 7 of article I of the New York State Constitution in that it deprives the defendant Scudder of the right to make a living and confiscates his property;
3. The People failed to prove beyond a reasonable doubt the existence of a 50-foot right of way;
4. There were insufficient “No Parking ” signs;
5. The parking by each defendant was within the excepting clause of section 1 of Ordinance No. 2 of the village.
Points 1 and 2 were raised by the defendants at the conclusion of the first trial and the law with .respect thereto was fully and ably discussed in the learned opinion of my senior Police Justice Charles C. MacLean, Jr. (People v. Scudder, 21 Misc 2d 614). I have not been furnished with any cases, and I have found none, which question the authorities upon which he relied.
Moreover, no evidence was offered on the retrial tending to show that the ordinance was an unreasonable, arbitrary, capricious or discriminatory exercise of the power granted to the village by section 1640 of the Vehicle and Traffic Law to prohibit, restrict or limit the parking of vehicles within the village. If anything, the evidence was to the contrary in that it showed that the parking prohibition was applied uniformly within the village and the testimony further showed that the paved portions of the roads in the village were relatively narrow (16 feet) and winding and that there was thus ample need for such prohibition.
Furthermore, even if the court were to assume for the sake of argument (the law seems clear to the contrary), as the defendants urge that there is an inherent or some sort of constitutional right in a private citizen to park on a public highway in violation of an ordinance duly enacted by a local legislative body in order to pursue his private business and earn a livelihood in the case where such private citizen does not have adequate parking space on private property owned by or available to him, the court could not excuse the violations in the instant case because such were not the facts here. By the defendant Scudder’s own admission there was an area on the property which the Fields’ allowed him to use (inside a gate and off the right of way) in which the cars could have been parked. This area or driveway was 50 feet in length, measured from the edge of the highway to the highwater mark of Lloyd Harbor. This constituted adequate space for two and perhaps three cars.
After having been warned by the police and instructed by Marshall Field’s superintendent to use such area, the defendant *917 Scudder himself testified that he chose not to use the same but to park on the highway (and apparently chose not to request the other defendants to use this area) “in defiance” of the ordinance.
Under these circumstances the court finds it difficult to understand how defense counsel can seriously urge the constitutional arguments that he has raised.
"With respect to the third point raised by the defendants, the court finds that the proof was more than sufficient to establish that the width of the "West Neck Eoad right of way in the vicinity of the area in question was 50 feet. Two of the policemen so testified and the defendant Scudder admitted as much on cross-examination. Accordingly the court finds no merit whatsoever to this objection.
Similarly, as to point number 4, the court finds no basis for acquittal on this ground. There was no dispute as to the existence and visibility of the five £ £ No Parking ’ ’ signs in the vicinity of the place where the violations occurred and there was no dispute with respect to the existence and visibility of three of the four no parking signs at the entrances to the village. There was no real dispute as to the visibility of the fourth entrance sign. One of the policemen testified that it was visible at the times in question; the other was not completely positive whether it was or not. No evidence was offered by the defendants that any of the signs were not visible.
Moreover, as to the defendant Scudder he himself testified that he knew of the existence of the signs and that he had been warned both by the police and by Marshall Field’s superintendent shortly before the summonses were issued that the ordinance and the signs posted thereunder were going to be enforced as against him and his boatmen.
Under all of the circumstances there is no doubt in the court’s mind that there were sufficient and adequate no parking signs which were visible to the defendants on the dates in question.
That leaves only the claim of the defendants that their parking was necessary or incidental to the transaction of business with or visits to a resident of the village.
Although his counsel urged that this exception applied also to defendant Scudder the court does not see how it can since the defendant was a resident of the village and he could not have been visiting or transacting business with himself. Accordingly, the court will restrict its comments on this point to the defendants Brooks and Gregson. This point was argued by the defendants Brooks and Gregson at the conclusion of the first *918 trial and was ably discussed by Police Justice MacLean in bis opinion therein (21 Misc 2d 614). The following comments are merely supplementary thereto.
I find nothing in the evidence produced at the second trial to change the analysis and conclusion reached by the court in such opinion. There is no doubt in by mind and I so find that the defendants Brooks and Gregson went to the premises on the dates in question for the purpose of going sailing in their boats and they did in fact go sailing in their boats. They were not there on business; the business part of their transactions according to the defendant Scudder having been transacted in April. Neither is there any basis for the claim that they were there on a visit to the defendant Scudder. The evidence does not establish, if anything it disproves, a host-guest relationship between them. The mere fact that they were courteous and greeted the defendant Scudder on their arrival and just prior to their departure does not turn their trips into “ visits to ” him as this term is commonly understood and used.
The court is satisfied that the defendants Brooks and Gregson were more akin to (if not, in fact) licensees or quasi-tenants of the defendant Scudder and as such had no more right to park on the right of way than any ordinary lessee or owner of a house in the village.
To interpret the ordinance otherwise in the court’s opinion would be to accord to all lessees and licensees in the village an immunity from the application of the ordinance. Not only would such an interpretation be unfair to and discriminatory against others in and out of the village but it might very well as a practical matter defeat the obvious purposes of the ordinance.
For these reasons and the reasons given in the opinion of this court on the first trial, I am unable to accept the contention of the defendants Brooks and Gregson that they fall within this exception.
"While the foregoing is sufficient to dispose of the defendants Brooks’ and Gregson’s contentions, it should perhaps be noted that the conclusion reached herein is in accord with one of the principal legislative purposes in enacting this ordinance, namely to prevent the obstruction of the public right of way in the event of an emergency. If, for example, while the defendants Brooks and Gregson had been sailing, an emergency had arisen which required the use of the entire right of way by one or more emergency vehicles (e.g. police cars, fire trucks, ambulances, etc.), these defendants would have been unavailable to remove or to assist the police in the removal of their vehicles from the *919 highway. This is clearly one of the situations which the ordinance was designed to avoid.
At the conclusion of the trial, the court reserved decision and adjourned the case to July 15,1961 for further proceedings. On the return date, the defendants appeared and made a further motion to dismiss on the ground that the court had lost jurisdiction by its reservation of decision. This very question was raised in an appeal from a judgment of this court (People v. Kraemer, 14 Misc 2d 42 [1958]). It was there decided by the County Court (Mundeb, J.) that subdivision 3 of section 702-a of the Code of Criminal Procedure authorized Police Justices (among others) to withhold decisions in cases of this type. It is interesting to note that in arriving at this decision Judge Muudbb overruled a prior decision of his own (People v. Baronowski, 208 Misc. 862) stating that a number of other courts had reached a different conclusion than he had originally. Under the circumstances and in the absence of any higher authority to the contrary, the law on this point seems settled and the court finds that there also is no basis for this objection. For the foregoing reasons, all of the motions to dismiss are denied and the court finds all of the defendants guilty as charged.