85 So.2d 337 (1956)
O. L. ARCHER et al., Plaintiffs-Appellants,
v.
CITY OF SHREVEPORT, Defendant-Appellee.
No. 8392.
Court of Appeal of Louisiana, Second Circuit.
February 2, 1956.
Rehearing Denied March 2, 1956.
Writ of Certiorari Denied May 7, 1956.
Jackson, Mayer & Kennedy, Comegys & Harrison, Shreveport, for appellants.
William L. Murdock, Wilkinson, Lewis & Wilkinson, James J. Butler, Shreveport, for appellee.
AYRES, Judge.
Plaintiffs, residents and property owners of the Bellmeade Subdivision to the City of Shreveport, sought by this action to have *338 decreed unconstitutional, null and void Ordinance No. 49 of 1953, which rezoned and reclassified Lots 1 to 10, inclusive, of Block "C" of the aforesaid subdivision located at the southeast intersection of Youree Drive and Southfield Road from a classification of a one-family residential district, designated "A-1", to a neighborhood commercial district, with a designated classification of "D-2". In addition, plaintiffs prayed that the City be enjoined from homologating the Ordinance and from issuing any construction permit thereunder.
Upon the owners of said property instituting a mandamus proceeding against the City to compel the issuance of a building permit for the erection of a neighborhood shopping center upon said lots, plaintiffs amended their petition and prayed for a temporary restraining order and, after due proceedings, for a temporary injunction prohibiting the issuance of the permit. A temporary restraining order was issued and a rule nisi was issued and served upon the City directing it to show cause why such preliminary writ should not issue as prayed for. Chris Demopulos and Alexander Mijalis, owners of the property rezoned and applicants for the permit to erect the shopping center, intervened in this suit and joined the defendant in resisting plaintiffs' demands.
After trial, judgment was rendered upholding the validity of the Ordinance under attack, rejecting plaintiffs' demands and denying plaintiffs' application and recalling the rule for a preliminary injunction.
From the judgment thus rendered and signed, plaintiffs devolutively appealed to the Supreme Court. There appellees filed a motion to dismiss the appeal, alleging that since the judgment appealed from was rendered, a building permit had been obtained by the intervenors from the City and that the intervenors were then engaged in constructing a community shopping center upon said property. Therefore, it was contended that the issues presented had become moot. This motion, however, was overruled. Archer v. City of Shreveport, 226 La. 867, 77 So.2d 517. Subsequently, for lack of jurisdiction in that Court, the appeal was transferred to this court. 228 La. 13, 81 So.2d 428.
In a supplemental brief appellees again urge that the issues presented by this appeal are moot and academic for the reason the building permit has been issued and the shopping district established and the buildings erected pursuant to such permit; that a reversal of the judgment could afford appellants no relief inasmuch as such a judgment would not have the effect of annulling the permit and an injunction does not lie to undo that which has already been done. As stated above, the Supreme Court has already ruled adversely to this contention. In its ruling the Court stated [226 La. 867, 77 So.2d 518]:
"But the motion completely overlooks the fact that the suit is not merely for the purpose of obtaining an injunction, as appellees contend. It also provides a specific attack on the validity of the ordinance under which the permit was issued, the plaintiffs having by appropriate allegations and prayer questioned its legality and constitutionality and having shown an immediate interest for doing so. Incidentally, the question could have been raised by them, and presented for determination, without the aid of injunction proceedings. And substantial results would follow a decree of this court reversing the judgment from which the appeal was taken. In such event, for example, the zoning classification of intervenors' property would return to that which existed prior to the adoption of the 1953 ordinance. As pointed out in City of New Orleans v. Levy, 223 La. 14, 64 So.2d 798, 802, an `* * * unconstitutional amending statute or ordinance is in reality no law, and in legal contemplation is as inoperative as if it had never been passed. * * *'"
Accordingly, the Supreme Court determined that issue and the appellees are precluded by the judgment thus rendered from *339 again presenting the question, which we could not with propriety discuss again.
The property involved here was annexed to the City on two separate occasions. That portion of the subdivision facing Southfield Road to the depth of one lot was annexed in 1947. The remaining, but the greater portion, was annexed in 1950. In 1948 the property at the four corners of the intersection concerned, which was the intersection of Youree Drive and Southfield Road, was zoned for D-2, commercial use, and was so zoned when plaintiffs purchased their property. Intervenors' application contemplated the increasing of the area at the southeast corner of said intersection to develop a community center, to consist of a super market, drug store, laundry pick up station, a barber shop and other businesses usually found at such a community center. An off-street parking area was to be provided for 324 cars. On the northwest corner of the intersection a Pak-A-Sak store was in operation. Adjacent to the property petitioned to be rezoned is a tract upon which the St. Paul's Episcopal Church has erected certain church edifices. Practically all the adjoining property was zoned A-1 for residential use in 1948. South of the subdivision is the municipal boundary, outside of which property was not affected by any zoning regulations.
The objections of the opponents to the zoning ordinance were summarized by the trial judge in his written opinion, wherein he stated:
"The objections of the opponents to this ordinance are that the proposed development would create a nuisance by having traffic congestion, endanger the lives of their children, by having unusual and annoying noises, by having unsightly garbage receptacles and the litter from the operation of such a place, by insect pests such as roaches, mice, rats, etc., and attending unpleasant odors. They all testify that they anticipate their property being depreciated to a value from fifteen hundred to three thousand dollars, and have asked the court for relief to protect their investments."
Opponents apparently had no objection to the commercial zoning classification of the property as it formerly existed but their objection was to the enlargement of that area.
The ordinance under consideration is attacked as unreasonable, arbitrary and capricious and as having no substantial relation to the public welfare. The facts established by the record rebut this contention. Typical of the testimony introduced on this point is that of the then Mayor of the City of Shreveport, Mayor Fant, who had lived within a mile of this area for a number of years and was familiar with this section of the City, its growth and needs. According to his testimony, this locality lies within the direction in which the City was rapidly developing. Complaints had been made by residents of the area to him as mayor concerning the lack of shopping facilities. By consistent study, the mayor had acquired considerable knowledge and information of community development, zoning, and community shopping districts. From his intensive study of this location, its development, needs and progress, he concluded a community shopping center was justified. In his testimony he gave as his opinion that the area proposed to be rezoned was the proper location for such a community center. Among the facts considered by him and upon which he based his determination are the central location of the proposed center, the population growth of the area, the thoroughfares making it accessible to the area and population to be served and the distance of eight-tenths of a mile to the nearest other shopping center. Considered also was the adequacy of the development program to fulfill not only the present but the future growth and development of the area, and particularly with reference to its off-street parking area. Such a development in his opinion was much to be preferred to the small commercial centers lacking in many desirable features, such as an off-street parking area. His was a general over-all view of the *340 community and of its present and future needs. The area was said to contain a population of 11,000.
Youree Drive, due to the re-routing of old Highway 20, now designated Highway One, will become a main thoroughfare for traffic entering the City from Alexandria, Natchitoches and other localities west of Red River. Southfield Road is likewise becoming a main thoroughfare running east and west and continuing through the western portion of the City to Greenwood and other points on through-highways. The importance of this intersection as a center of development is well established.
Similar testimony was given by members of the City Council and of the Planning Commission. The reasons advanced by them are substantial reasons and bear a substantial relation to the public needs and welfare. They were sufficient, in our opinion, to justify the action taken by the Planning Commission in recommending that the property be rezoned. Likewise, they afford ample grounds for the passage of the ordinance by the City Council. Where there is any substantial basis or reasons for the action taken, it is not the prerogative of a court to take issue with the members of the Council and substitute its own judgment.
In State ex rel. Civello v. City of New Orleans, 154 La. 271, 283, 97 So. 440, 444, 33 A.L.R. 260, wherein the main question presented was whether a zoning ordinance for business establishments in a designated residential district was a valid exercise of the police power, the court stated:
"If the municipal council deemed any of the reasons which have been suggested, or any other substantial reason, a sufficient reason for adopting the ordinance in question, it is not the province of the courts to take issue with the council. We have nothing to do with the question of the wisdom or good policy of municipal ordinances. If they are not satisfying to a majority of the citizens, their recourse is to the ballotnot the courts."
Justice Sutherland of the United States Supreme Court quoted extensively from the Civello case in Village of Euclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 118, 71 L.Ed. 303, and approved the ruling of the Louisiana Supreme Court. In that case we find this comment:
"Building zone laws are of modern origin. They began in this country about 25 years ago. Until recent years, urban life was comparatively simple; but, with the great increase and concentration of population, problems have developed, and constantly are developing, which require, and will continue to require, additional restrictions in respect of the use and occupation of private lands in urban communities. Regulations, the wisdom, necessity, and validity of which, as applied to existing conditions, are so apparent that they are now uniformly sustained, a century ago, or even half a century ago, probably would have been rejected as arbitrary and oppressive. Such regulations are sustained, under the complex conditions of our day, for reasons analogous to those which justify traffic regulations, which, before the advent of automobiles and rapid transit street railways, would have been condemned as fatally arbitrary and unreasonable. And in this there is no inconsistency, for, while the meaning of constitutional guaranties never varies, the scope of their application must expand or contract to meet the new and different conditions which are constantly coming within the field of their operation. In a changing world it is impossible that it should be otherwise. But although a degree of elasticity is thus imparted, not to the meaning, but to the application of constitutional principles, statutes and ordinances, which, after giving due weight to the new conditions, are found clearly not to conform to the Constitution, of course, must fall.
"The ordinance now under review, and all similar laws and regulations, must find their justification in some *341 aspect of the police power, asserted for the public welfare. The line which in this field separates the legitimate from the illegitimate assumption of power is not capable of precise delimitation. It varies with circumstances and conditions. A regulatory zoning ordinance, which would be clearly valid as applied to the great cities, might be clearly invalid as applied to rural communities. In solving doubts, the maxim `sic utere tuo ut alienum non laedas,' which lies at the foundation of so much of the common law of nuisances, ordinarily will furnish a fairly helpful clew. And the law of nuisances, likewise, may be consulted, not for the purpose of controlling, but for the helpful aid of its analogies in the process of ascertaining the scope of, the power. Thus the question whether the power exists to forbid the erection of a building of a particular kind or for a particular use, like the question whether a particular thing is a nuisance, is to be determined, not by an abstract consideration of the building or of the thing considered apart, but by considering it in connection with the circumstances and the locality. Sturges v. Bridgeman, L.R. 11 Ch. [Div.] 852, 865 [ C.A.]. A nuisance may be merely a right thing in the wrong place, like a pig in the parlor instead of the barnyard. If the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control. Radice v. [People of State of] New York, 264 U.S. 292, 294, 44 S.Ct. 325, 68 L.Ed. 690 [694]."
In Radice v. People of State of New York, supra [264 U.S. 292, 44 S.Ct. 326], cited in the Euclid case, the United States Supreme Court stated:
"Where the constitutional validity of a statute depends upon the existence of facts, courts must be cautious about reaching a conclusion respecting them contrary to that reached by the Legislature; and if the question of what the facts establish be a fairly debatable one, it is not permissible for the judge to set up his opinion in respect of it against the opinion of the lawmaker. The state Legislature here determined that night employment of the character specified was sufficiently detrimental to the health and welfare of women engaging in it to justify its suppression, and, since we are unable to say that the finding is clearly unfounded, we are precluded from reviewing the legislative determination. Holden v. Hardy, 169 U.S. 366, 395, 18 S.Ct. 383, 42 L.Ed. 780 [792]."
In City of Shreveport v. Conrad, 212 La. 737, 33 So.2d 503, 505, wherein the defendant on being charged with flying an airplane less than 1,000 feet above the waters of Cross Lake and bringing it to rest on the waters thereof, in violation of a City ordinance, plead that the ordinance was illegal, ultra vires and unconstitutional upon the alleged grounds that the ordinance was not primarily adopted for the prevention of pollution and contamination of the waters of the Lake and that airplanes posed no real or substantial threat to the purity of these waters, the court stated:
"We are not concerned with the motives which induced the council to adopt the ordinance, but only with the power of the city to adopt it. The motives of a municipal council cannot be inquired into for impugning the validity of a public ordinance. City of New Orleans v. Griffin, 147 La. 1089, 86 So. 554. It is sufficient if the ordinance as a whole bears a rational relation to the protection of these waters from pollution and contamination. We cannot interfere with the city in the exercise of its powers to protect the health of its citizens from pollution of these waters in the absence of a clear abuse of its discretion, unless the ordinance is manifestly unreasonable and oppressive. While the city has not been granted full police power, it has been granted sufficient police power to prevent the pollution and contamination of these waters, in order to protect the health *342 of its citizens. Its authority to pass necessary ordinances for this purpose is governed by the rules applicable to the exercise of police power. It is not within the province of the courts, except in clear cases to interfere with the exercise of a power, imposed by law in a municipal corporation, to pass ordinances relating to objects within the proper domain of the police power. This is especially true when the object is the protection of public health. Among the police powers none are more important than that for the protection of public health. It is the function of the legislative branch of the government to exert what are known as the police powers of the state and to determine primarily what measures are appropriate or needful for the protection of public health. City of New Orleans v. Schick, 167 La. 674, 120 So. 47. The Schick case is also authority that courts will not interfere with the action of local legislative authority in the exercise of a police power, unless it is plain and palpable that such action has no real or substantial relation to public health or safety or general welfare. The city has been granted sufficient police power to protect the health of its citizens from the pollution or contamination of its water supply and we are not prepared to say that the city abused its discretion in adopting the ordinance, or that it has no substantial relation to the pollution or contamination of the waters of the lake."
The court, in Chapman v. City of Shreveport, 225 La. 859, 74 So.2d 142, 145, after quoting Section 2.01 of the City Charter relative to the exercise of powers concerning the general welfare of the City, further stated:
"Accordingly, if fluoridation of the water supply bears any reasonable relation to the public health, it can be undertaken by the city under the express provisions of this section of its charter. Moreover, it is well settled that courts will not interfere with the legislative authority in the exercise of its police power unless it is plain and palpable that such action has no real or substantive relation to the public health or safety or general welfare. City of Shreveport v. Conrad, 212 La. 737, 33 So.2d 503; City of Shreveport v. Bayse, 166 La. 689, 117 So. 775. There also exists a presumption that an ordinance adopted under the police power of the state is valid, and the burden of proving the contrary is on him who asserts the invalidity or nullity. City of New Orleans v. Beck, 139 La. 595, 71 So. 883, L.R.A.1918A, 120; Ward v. Leche, 189 La. 113, 179 So. 52; State v. Saia, 212 La. 868, 33 So.2d 665; State v. Rones, 223 La. 839, 67 So.2d 99."
In State ex rel. Dema Realty Co. v. McDonald, 168 La. 172, 121 So. 613, 616, wherein relator owned certain real estate located at the corner of Baronne and Bordeaux Streets in the City of New Orleans, which was and had been used for many years as a retail grocery store, the operation of which was prohibited by a zoning ordinance adopted in 1927, the court stated concerning the attack upon the ordinance as unconstitutional, arbitrary, and unreasonable, and constituting a taking of his property without due process of law:
"That zoning ordinances are within the police power of municipal corporations and are not violative of any constitutional guaranty, state or federal, is now too well settled to require discussion or citation of authorities.
"And equally well settled is the rule that zoning ordinances will not be declared unreasonable and arbitrary, unless they are found to be plainly and palpably so.
"In the instant case there is nothing on the face of the ordinance and nothing in the record on which the court would be authorized or justified in declaring the attacked provision of the ordinance harsh, arbitrary, or unreasonable.

*343 * * * * * *
"The matter is left to the sound judgment and discretion of the municipal authorities, and this discretion will not be interfered with by the courts, unless its exercise is found to be manifestly and palpably hostile and unreasonable."
The jurisprudence of Louisiana is, therefore, well settled that zoning ordinances are within the police power of municipal corporations and do not violate any constitutional guaranty, and that such ordinances will not be declared unreasonable and arbitrary, unless they are found to be plainly and palpably so.
From Zoning Law and Practice By Hokley, Vol. 1, 1953 Edition, Sec. 185, Page 476, an excerpt reads as follows:
"In enacting a zoning ordinance the police power is exercised and there is no justification for holding the classification of property unreasonable unless it appears palpably arbitrary or unless there is no basis or reason to support it."
The author cites in support of this proposition twenty-one recent decisions from various courts of the country. The author also states, on Page 185 in Section 84:
"No proposition of zoning law could be better settled, we think, than that a municipality has a right to amend its zoning ordinance so long as the amendment is reasonable and follows the procedure of the enabling statute making provision for a comprehensive ordinance."
Cited as supporting this proposition are the following cases: Hendlin v. Fairmount Construction Co., 8 N.J.Super. 310, 72 A. 2d 541; Johnson v. Evangelical Lutheran Church of Messiah, 79 Ga.App. 671, 54 S.E.2d 722.
It would appear that the same reasons and basis justifying zoning of an area in the first instance would likewise justify a change in classifications, if, and when, conditions and circumstances warranted and justified the same. The grounds justifying either, ordinarily, would have the same application to both situations.
The Supreme Court of Errors of Connecticut, the highest appellate court in that State in civil matters, had before it a very similar situation in the case of Bartram v. Zoning Commission of City of Bridgeport, 136 Conn. 89, 68 A.2d 308, 311, wherein one Rome petitioned for a change in classification of certain property for residential use to use for commercial purposes as a shopping center. When the zoning was originally adopted in that City, the area was sparsely settled and contained much open land. For many years people desiring to get away from the noise and congestion of the City proper built their homes in that locality. Rome made the aforesaid application for a change in classification so as to build a shopping center very similar to the one proposed in the matter before us. Opposition was made very much the same as the opponents made in this case. The zoning authority gave as its reasons that the location for the proposed community center was at least a mile from any other shopping center; that there were few residences that would be directly affected by the change, and that the regulations pertaining to liquor restrictions and off-street parking would alleviate the congestion in centralized shopping districts. The court upheld the reclassification of the property and stated:
"The property of no one was taken by the commission's decision; nor is there any finding or, indeed, evidence that property values would be affected. * * * Property owners in the neighborhood had no right to a continuation of the existing situation which could be effective against a decision by the commission reached legally and properly. The state, through the authority it vests in zoning authorities, `may regulate any business or the use of any property in the interest of the public health, safety, or welfare, provided this be done reasonably. To that extent the public interest is supreme and *344 the private interest must yield.' Town of Windsor v. Whitney, 95 Conn. 357, 366, 111 A. 354, 356, 12 A.L.R. 669 * * *.

"How best the purposes of zoning can be accomplished in any municipality is primarily in the discretion of its zoning authority; that discretion is a broad one; and unless it transcends the limitations set by law its decisions are subject to review in the courts only to the extent of determining whether or not it has acted in abuse of that discretion. First National Bank & Trust Co. v. Zoning Board of Appeals, 126 Conn. 228, 237, 10 A.2d 691. A court is without authority to substitute its own judgment for that vested by the statutes in a zoning authority. Piccolo v. Town of West Haven, 120 Conn. 449, 455, 181 A. 615; Mrowka v. Board of Zoning Appeals, 134 Conn. 149, 155, 55 A.2d 909. In view of the facts present in this case, the trial court could not properly find that the policy which determined the decision of the commission would so clearly fail to serve the proper purposes of zoning in the city that the court might set aside that decision; nor do the facts show that it was unreasonable to apply that policy in the situation before us * * *." (Italics ours.)
We, therefore, conclude that, substantial basis or reasons having been established for the adoption of the ordinance, it is not amenable to the attack here made upon it. In view of the substantial basis and reasons for the adoption of the ordinance, the court would be unjustified and unauthorized in substituting a contrary opinion for that of the Planning Commission or of the Commission Council.
Another attack upon the ordinance is that it is discriminatory in that it denies equal protection of the law. Plaintiffs, in brief, argue that inasmuch as a similar area in the southwest corner of the aforesaid street intersection was not likewise zoned for a similar commercial purpose, a discrimination exists sufficient to warrant annulling the ordinance. We do not so construe the ordinance as discriminatory for that reason. Neither are we certain that plaintiffs are entitled to urge the question. It has not been shown or pointed out that the owners of property in that area desire that said property be reclassified or that they have petitioned for such reclassification and have been denied in their application. The question of whether that property should be reclassified is not now before us and, so far as the record shows, the matter of its reclassification has never been brought to the attention of either the Planning Commission or of the Municipal Council. The mere act of zoning presupposes the establishment of a line of demarcation between areas placed in different classifications or from that placed in no classification. The determination of the limits or boundaries of such classified areas is also a legislative function, with which the courts are not concerned, except where they are unreasonable, arbitrary or capricious or lack some reasonable, substantial basis for their location. In other words, the same rules apply to the establishment of the boundaries as apply in zoning the property itself. We do not understand that the difference in use of property on one side of a line of classification from that of the use of property on the opposing side constitutes such discrimination as would affect the validity of the zoning ordinance. As stated, the line of demarcation must exist somewhere, and unless shown to have been unreasonably or arbitrarily placed so as to include or exclude property without reason or a substantial basis therefor, its establishment could not be said to be discriminatory. No such showing has been made in this case. Therefore, we conclude that the ordinance is not discriminatory or that it denies equal protection of the law.
It is lastly contended that in adopting the ordinance the constitutional guaranty of due process was violated, both procedurally and substantively. Plaintiffs contend that the formalities required to be adhered to were not complied with by the Planning Commission in holding a public *345 hearing or in making its recommendation to the Municipal Council. Defendants contend, however, that the statute relied upon by plaintiffs is not applicable to the City of Shreveport, but, if applicable, then that all of the formalities prescribed as a prerequisite to the valid enactment of the zoning ordinance under attack have been fully met.
The City's contention appears to possess considerable merit. Section 1 of Act 27 of 1918, LSA-R.S. 33:4731, reads as follows:
"Section 1. Be it enacted by the General Assembly of the State of Louisiana that the municipal authorities of Cities of more than 50,000 inhabitants shall have authority by ordinance to define and regulate the kind, style and manner of construction of buildings and other edifices which may be erected on certain designated streets and thoroughfares and to permit or prohibit the establishment and operation of businesses and trades within designated limits."
Pursuant to this statutory authority, the City of Shreveport, by adopting Ordinance No. 51 of 1935 amending Ordinance 100 of 1925, had rezoned Lot 14 of Waverly Place Subdivision from residential use, "Z-A", to commercial use, "Z-D". In Collett v. City of Shreveport, La.App., 168 So. 346, 348, owners of property adjoining the lot which was rezoned from residential to commercial attacked the validity of the ordinance, contended, among other things, that the ordinance did not comply with the provisions of Section 3 of Act 240 of 1926, LSA-R.S. 33:4723, requiring that such regulations be made in accordance with a comprehensive plan, but, on the contrary, that said ordinance was purely a local affair and passed at the request of individuals for their selfish purpose, not in accordance with any plan as comprehended by said Act No. 240 of 1926. It will be noted, however, that under Section 12 of said Act, LSA-R.S. 33:4721 note, that its provisions did not repeal or limit the power delegated to a city of over 50,000 inhabitants by Act 27 of the Legislature of Louisiana of 1918 but were to be considered only as supplementary thereto. This court stated:
"The city of Shreveport has a population of over 50,000 and, unless this act has been repealed, it is applicable here. Under the above-quoted act, there was no restriction placed upon the municipal authorities of the city of Shreveport as to their right to zone property within its limits and, by doing so, declare that in certain areas there shall be conducted and operated certain businesses and trades. It does not require that before doing this, anything be done other than the passage of an ordinance to that effect."
The statute upon which plaintiffs rely was formerly Act No. 240 of 1926, Section 6, now LSA-R.S. 33:4726. Under this section it is suggested that when a change is proposed in the zoning law of the ordinance, three requisites must be complied with, (1) there must be a public hearing; (2) the zoning commission must make a report of its findings and recommendations, and (3) the legislative body must not act until it receives the report of the commission. This section of the Revised Statutes reads as follows:
"In order to avail itself of the powers conferred by R.S. 33:4721 through R.S. 33:4729 the legislative body of the municipality shall appoint a zoning commission whose function it shall be to recommend the boundaries of the various original districts as well as the restrictions and regulations to be enforced therein, and any supplements, changes or modifications thereof. Before making any recommendation to the legislative body of the municipality the zoning commission shall hold a public hearing. Notice of the time and place of the hearing shall be published at least three times in the official journal of the municipality, or if there be none, in a paper of general circulation therein, and at least ten days shall elapse between the first publication and date of the hearing. After the hearing has been held by the zoning commission it shall make a report of its findings and *346 recommendations to the legislative body of the municipality. The legislative body shall not hold its public hearings or take action until it has received the final report of the zoning commission.
"Where a municipal planning commission exists it shall be the zoning commission."
From the facts established by the record plaintiffs' complaints are unjustified. The minutes of the Planning Commission reflect that at a meeting on February 5, 1952, intervenors, Chris Demopulos and Alexander Mijalis, owners of the property in question, presented their application to rezone the property adjacent to the property already zoned D-2. Thereafter, the Planning Commission, which is vested with the authority of a zoning commission, held the following meetings relative to this application, the first of which was held February 11, 1952, when the Commission approved the application for a public hearing. This public hearing was held on March 4, 1952, when a petition in opposition to the application for rezoning was presented. On March 10, 1952, the Commission postponed action for further study. It appeared at that time that there was a question of a drainage problem which affected the property to be zoned, and at the request of one of the commissioners action was delayed pending the correction of that problem.
At a meeting on January 26, 1953, applicants were instructed to supply the Commission with more detailed information. On March 9, 1953, a motion was made that the application be recommended to the Municipal Council for approval. However, on April 24, 1953, the Commission held a public hearing, which was attended by 16 resident property owners and their attorney, all of whom testified in opposition to the recommendation. There five others present who did not testify. The Commission met again on April 27, 1953, and discussed the subject matter and held up action for further study. Following, on May 11, 1953, the Commission met and voted on the matter and all members recommended approval of the application, except one member who recused himself. On May 11, 1953, after the approval of the intervenors' application, the Planning Commission furnished the City Council with its recommendations of approval and the minutes of the second public hearing held on April 24, 1953, for whatever action it might decide to take. On May 13, 1953, the Council passed Ordinance No. 49 of that year zoning the property.
Ordinance No. 80 of 1948, the general zoning ordinance, Section 21, Paragraph B 2 provides that where changes are proposed by the City Planning Commission, the minutes of the public hearing, together with the Commission's recommendation, shall be furnished the City Council for its consideration and action. Where, however, a change has been proposed by any person, firm or corporation, the Commission shall likewise furnish the City Council for its consideration and action the minutes of the public hearing, together with its recommendations, as if the change was proposed by the Commission itself. Where, however, after holding a preliminary hearing, it should reject the application, then it is required to communicate to the City Council its reasons in writing for such rejection.
The trial court found that the ordinance in question was adopted after reasonable and substantial compliance with the requirements of the statute and of the aforesaid general zoning Ordinance of the City of Shreveport and upheld its validity. Our review of the record has disclosed no manifest error in his findings and conclusions reached on this point.
Accordingly, it is our opinion that the Planning Commission complied with all the conditions precedent to the creation of an amendment to the zoning ordinance by affording to plaintiffs full and ample opportunity to present their views, and it was only after repeated meetings at which the matter was most carefully considered that the application for the zoning change was recommended to the City Council. The Planning Commission was not required to report any specific findings of fact or a detailed *347 analysis of their findings in making its recommendations to the City Council. The evidence establishes to our satisfaction that the matter was handled entirely fairly as to the rights of plaintiffs and all others concerned and that the procedural requirements were properly complied with.
For these reasons, the judgment appealed is affirmed at appellants' costs.
Affirmed.