216 So.2d 140 (1968)
William Joseph HUNTER et al., Plaintiffs-Appellants,
v.
CITY OF SHREVEPORT et al., Defendants-Appellees.
No. 11078.
Court of Appeal of Louisiana, Second Circuit.
October 31, 1968.
Rehearing Denied December 3, 1968.
Writ Refused January 24, 1969.
*141 Wilkinson, Woods, Carmody, Meadows & Hall, Shreveport, for plaintiffs-appellants.
J. N. Marcantel, John Gallagher, Shreveport, for City of Shreveport, defendant-appellee.
Philip K. Jones, Norman L. Sisson, Robert J. Jones, Baton Rouge, for Department of Highways of State of Louisiana, defendant-appellee.
Before GLADNEY, AYRES and BOLIN, JJ.
AYRES, Judge.
This is an action to enjoin the construction, by the Department of Highways of the State of Louisiana, of two parallel bridges over Cross Lake as a part of Interstate 220, a limited-access bypass around the City of Shreveport. An injunction is also sought against the City of Shreveport, the City Council, and the individual members of the council prohibiting them from granting any permit or giving any official consent to the proposed construction and requiring them to withdraw any permit or consent already granted or given therefor.
Plaintiffs are taxpayers of the City of Shreveport and consumers of water supplied from the municipal waterworks. Most are residents of the city and several are residents of Willow Point, a peninsula jutting out from the south shore of Cross Lake, whose property will be included in or affected by the proposed route.
Cross Lake is the primary source of water supply for the City of Shreveport. The bed of the lake to the 172-foot contour above mean Gulf level was acquired from the State of Louisiana by the City of Shreveport pursuant to Act 31 of 1910, as amended by Act 149 of 1920, and to Act 39 of 1926, to enable the city to provide a supply of good, pure, and wholesome water for its citizens. For this purpose the statutes provide the lake will serve as a basin or reservoir for the storage of water.
The propositions upon which plaintiffs base this proceeding are that the action of the defendants in selecting the route traversing *142 the Shreveport water supply reservoir is arbitrary and unreasonable, constituting a threat to the health and safety of the inhabitants of the city through contamination of the water supply to the extent that the lake's purpose as a water supply reservoir will be curtailed or destroyed; and the defendants are moreover estopped from taking the action contemplated which would interfere with or impair the use of the lake, intended by its dedication, and relegate its use to other purposes.
On an appeal from an adverse judgment, plaintiffs assign as error the court's failure to sustain these propositions.
The important and decisive question is whether the proposed construction is so inconsistent with the dedication of Cross Lake as a water reservoir to the City of Shreveport as to be incompatible therewith. The acts of the Legislature of the State of Louisiana, whereby it ceded Cross Lake to the City of Shreveport for a cash consideration, specifically provided that title to the lake would revert to the State upon a refund of the purchase price when and if the lake ceased to be used as a water supply reservoir for the city. These legislative acts did not prohibit any other use of the lake not inconsistent with its use as a source of water supply. This has been the interpretation placed upon the language of the statutes by the city in permitting the lake's use as a recreational area for boating, skiing, swimming, and fishing, as well as for a landing strip for pontoon-equipped airplanes.
Unless there are other factors that make it such, the mere construction, maintenance, and operation of the bridges across the lake as a segment of the interstate bypass is not an inconsistent use of the lake with its main function as a water supply reservoir. This improvement in itself would not serve to destroy the use intended when the lake was ceded by the State to the city.
Thus the case of Anderson v. Thomas, 166 La. 512, 117 So. 573 (1928), may be distinguished from the instant case. There it was proposed that a municipal auditorium be erected in Princess Park. There the court found that the erection of an auditorium would practically destroy the lot as a park and convert its use into a public square used as a site for public buildings.
One of such other factors presented is the possibility of pollution or contamination of the city's water supply. It is contended that if the bridges were constructed and a vehicle carrying noxious and poisonous chemicals and materials should be involved in an accident thereon the water supply would possibly be polluted or contaminated. This phase of the case was covered in the testimony of several expert witnesses. This testimony represents a conflict between idealism and realism. An ideal water reservoir envisioned by some of the experts is one in which human beings are prohibited from being near, over, on, or from crossing it.
While idealism is not to be abhorred, it must be equated with the facts. The ideal envisioned was impossible from the moment of the creation of Cross Lake as a water supply. For instance, the railroad embankment which forms a dam for the water reservoir created a problem with respect to the pollution and contamination of the water supply. Trains transport carloads of chemicals, poisons, and explosives which could be, in case of a wreck on the dam, dumped into the lake. Highways around the lake constitute a like hazard in a minor degree. An identical threat would be presented in boating accidents. A greater hazard arises from the use of Cross Lake as a landing strip for pontoon-equipped aircraft. The proposed construction would not introduce a new danger to the city's water supply but would merely add to the dangers which presently exist.
The chief engineer and water analyst of the Department of Public Utilities of the City of Shreveport forecast an awesome and gruesome condition if the bridges should be erected and if a wreck were to occur thereon by vehicles carrying noxious *143 and poisonous materials, and if, as a result of such an accident, chemicals were to drop into the lake. Testimony supports matters of common knowledge that accidents occur on highways and bridges nationwide. A number were said to be capable of causing water pollution. However, the testimony does not reveal a single human fatality.
The possibility of pollution of the water supply through traffic over the lake was a factor considered by both the City of Shreveport and the Department of Highways, which obviously found the possibility of danger in the construction so remote as to be inconsequential.
The question therefore actually before the court was not whether such a danger existed but whether the decision, reached by the city and the Department of Highways, that such danger was not so imminent as to make the proposed construction incompatible with the dedication as a water reservoir was arbitrary and capricious. On this score we find nothing in the facts established in this record, to which we have already referred, that would warrant a disagreement by us with the conclusions reached by these authorities.
In considering a question of the reasonableness of legislative actions such as the decisions of the City Council of the City of Shreveport and of the Department of Highways, with respect to their determination of the route proposed for the construction, there are rules by which we must be guided. For instance, a presumption exists that a municipal legislative act is valid and the burden of proving the contrary is on him who asserts its invalidity or nullity. City of New Orleans v. Beck, 139 La. 595, 71 So. 883, L.R.A.1918A, 120 (1916); Ward v. Leche, 189 La. 113, 179 So. 52 (1938); State v. Saia, 212 La. 868, 33 So.2d 665 (1947); Meyers v. City of Baton Rouge, 185 So.2d 278 (La.App., 1st Cir. 1966).
Moreover, a court may not interfere with the exercise of legislative discretion nor substitute its judgment for that of the legislative body except where the legislative action is so clearly arbitrary and capricious as to be unreasonable. Blocker v. City of New Orleans, 50 So.2d 498 (La. App., Orls.1951); Archer v. City of Shreveport, 85 So.2d 337 (La.App., 2d Cir. 1956); Scott v. City of West Monroe, 95 So.2d 343 (La.App., 2d Cir. 1957); La Fleur v. City of Baton Rouge, 124 So.2d 374 (La.App., 1st Cir. 1960); Boyle v. New Orleans Public Service, Inc., 163 So.2d 145 (La.App., 4th Cir. 1964). See, also: 62 C.J.S. Municipal Corporations §§ 148 and 149.
Thus, in order for legislative action to be clearly arbitrary and capricious, it must be shown there was no room for a difference of opinion and that there was no substantial evidence upon which the legislative action could have been taken. Torrance v. Caddo Parish Police Jury, 119 So.2d 617 (La.App., 2d Cir. 1960).
McQuillin, on "Municipal Corporations," third edition, Vol. 6, § 20.03, states the rule thus:
"The extent of the power of the courts in connection with municipal affairs is to see that the limitations existing under or powers granted by the constitution and the laws are not transcended. A court cannot, under purported exercise of a power to declare an ordinance void, invade the legislative or any other governmental function vested in a municipal corporation. The doctrine of separation of powers between the judicial and other branches of government prevails as well on the local as on the state or national level. Accordingly, it is not the province of the judiciary to set up its judgment against that of the city authorities as to the method or means adopted toward the accomplishment of a legitimate object unless the method or means are clearly unreasonable. The method adopted need not necessarily be the best. In truth, courts will not interfere, and have no power to interfere, with an ordinance duly enacted and within the municipal *144 competency unless its invalidity appears on its face or is established by admissible extrinsic evidence." (Emphasis supplied.)
This principle was applied in Gibson v. City of Baton Rouge, 161 La. 637, 109 So. 339, 340, 47 A.L.R. 1151 (1926). There the question was whether the court would interfere with the selection of a site on which it was proposed that a garbage disposal plant be constructed. In concluding that the action was legislative in character, with which the court should not interfere, the court stated:
"We think that selecting the site on which a public necessity, or public work of any sort, should be located, is essentially a legislative and not a judicial function. The very nature of the determination to be arrived at marks it as such; for it requires the exercise of much discretion, of a nature which a court would not be competent to exercise; involving an inquiry into, and consideration of, all the surrounding circumstances and the necessity perhaps of making the final selection wholly on its own initiative and regardless of the suggestions of those appearing before it. It is manifest also that such discretion can no more be controlled by the courts than exercised in the first instance."
It is therefore incumbent upon the court to accord the City Council of the City of Shreveport and the Department of Highways of the State of Louisiana the presumption that their actions were not arbitrary and capricious.
Another presumption concerns a question as to whether the action of the trial court was an abuse of its discretion in concluding that the proposed construction was not inconsistent with the use of Cross Lake as a water reservoir for the City of Shreveport. As the trial court could not substitute its own discretion for that of the City Council of the City of Shreveport and of the Department of Highways, this court may not substitute its discretion for that of the trial court. The rule involved is known as the doctrine of "manifest error." This doctrine has been historically a part of the jurisprudence of this State. A late distinguished jurist and presiding judge of this court, George W. Hardy, Jr., while advocating the abandonment of the principle, nevertheless recognized the existence and validity of the manifest error rule in the jurisprudence of this State. 21 La.L.Rev. 749. His observation was the subject of a comment by the distinguished presiding judge of the Third Circuit, wherein, in 22 La.L.Rev. 605, 608, he commented:
"In my opinion, this rule of review requires not only that the appellate court accept the trial court's determinations as to which witnesses are more credible. It also requires that the appellate court will not disturb the trial court's express or implied factual findings if the evidence is reasonably open to any interpretation in accord therewith. By this, I mean that there is a presumption on appeal that the trial court's judgment is correct, from which it follows that on appeal a reviewing court should not reverse an adjudication by the trier of fact if such result is justified by according to the evidence any weight or meaning or shading thereof which the trial court may reasonably have accorded to it; that the ambiguities in a record which often result from oversight during the heat of trial, and sometimes also perhaps from the astute desire of counsel not to develop aspects unfavorable to their cause, should be construed in favor of the correctness of the trial court; in short, that an appellate court must not reverse a factual decision of the trial court in the absence of manifest error."
The trial court, as evidenced in its written reasons for judgment, considered all the expert testimony adduced by both plaintiffs and defendants. That thorough and conscientious consideration was given to all the facts and circumstances disclosed by the record cannot be doubted.
*145 For the reasons assigned, we find no basis for concluding there was an abuse of discretion vested in the City Council of the City of Shreveport and in the Department of Highways of the State of Louisiana in selecting the route for a proposed construction of Interstate 220 controlled-access bypass over Cross Lake, or that their actions were arbitrary, capricious, or unreasonable. Nor do we find any manifest error in the judgment of the trial court.
The judgment is accordingly affirmed at plaintiffs-appellants' costs.
Affirmed.