AYRES, Judge.
This is an action by 29 representative citizens, residents, and taxpayers of the City of Shreveport and of the Parish of Caddo to enjoin the Caddo Parish Police Jury from proceeding further with its plans to expand, to enlarge, and to otherwise improve the Caddo Parish Courthouse, an undertaking authorized in a special bond and tax election of October 29, 1968, and, further, to prohibit the removal of any of the live oak trees circling the courthouse square to make room for the proposed improvements. The plans contemplate, among other things, the construction of two wings to the courthouse which would require the removal of two or more trees near the middle of the block on each of the east and west sides of the courthouse square.
As a basis of this action, plaintiffs contend the present building on the courthouse square limits and restricts the square’s use as a public square, public common, and public park, and that any further encroachment upon the “square” by the expansion of the courthouse will substantially impair and destroy the square’s usefulness as a park and as a place for rest, recreation, and entertainment. Thus, it is contended that the contemplated acts of defendant would constitute further trespass upon property allegedly owned by the City of Shreveport of which, it is alleged, it should have, through its governing authority, possession, control, management, and administration.
In the alternative, plaintiffs contend that for the police jury to carry out its plans there would be a waste of funds; that cheaper quarters may be obtained elsewhere and, moreover, agencies, for which the police jury is not required to provide quarters, might be moved from the courthouse and thus eliminate any need for additional space.
A further claim is made to the effect that as title to the courthouse square is in the City of Shreveport, the Caddo Parish. Police Jury is without power or authority to carry out its plans for the expansion and improvement of the courthouse.
Plaintiffs having alleged that title to the property concerned is in the City of Shreveport, defendant excepted to their petition as disclosing no right of action in them to assert any right or claim thereto on behalf of the City of Shreveport as against the defendant, Caddo Parish Police Jury, which, it is alleged as a fact, has the administration and control of the property for the use and benefit of the public as a whole and particularly for the benefit of all the people of Caddo Parish.
In an exception of no cause of action, defendant points out that, insofar as the bonds issued in connection with the project of expanding and otherwise improving the courthouse are concerned, the police jury was authorized to incur debt and issue *205 bonds for that purpose, and that, after the expiration of a peremptive period now long past, no taxpayer, nor subdivision affected, shall be permitted to question the validity or regularity of the obligations represented by the bonds; nor does any court have the authority to inquire into such matters and, moreover, no court has the authority to interfere with the exercise of discretion of the local governing authority, nor may any court substitute its judgment for that of the local authority unless its action is so plainly, palpably, and manifestly arbitrary and capricious as to be oppressive and unreasonable.
The exceptions of no cause and of no right of action were referred to the trial of the case upon its merits. Defendant then answered plaintiffs’ demands and, following the trial of this cause upon its merits, plaintiffs’ demands were rejected and their suit dismissed, whereupon they appealed.
On a basis of the allegations of plaintiffs’ petition and of defendant’s answer, the following historical facts were either admitted or established on the trial of the case. During the year 1836, Shreve Town Company, a partnership, whose members were the owners of all the land comprising the present day downtown Shreveport, caused a map, or plat, thereof to be made and recorded. The property was divided into 60 or more blocks separated and served by appropriate streets and alleys. All the blocks were further subdivided into lots except Block 23, designated on the plat as a “public square,” which was left intact. This area was then a part of Natchitoches Parish, out of which Caddo Parish, with its present boundaries, was created by an act of the Legislature in the year 1838. The town of Shreveport wgs created by an act of the Legislature of 1839. Its boundaries were coextensive with the boundaries shown on the plat of 1836. Following recordation of this plat the owners sold various and sundry lots with respect to the plat.
From and after the creation of Caddo Parish until 1860, the police jury utilized other sites than Block 23 for courthouse purposes. A jail, however, was erected by the police jury in 1846 on the southwest corner of the square. Since that time the square has been continuously under the administration of the Caddo Parish Police Jury and used for housing the parish offices which serve the people of the parish. The town of Shreveport contracted with the parish to use the jail for its prisoners under an agreement that the jail would remain under the jurisdiction, management, and control of the parish.
There is no showing of any particular use made of the “square” prior to 1846 or that the town of Shreveport ever exercised any jurisdiction or authority over it. A courthouse was, however, erected by the parish upon the “square” in 1860. This original courthouse was demolished and replaced by another in 1892 which was enlarged and expanded in 1907. This second courthouse was likewise demolished and replaced by the present and enlarged structure erected in 1927.
To improve the square, the late T. Fletcher Bell, a judge of the District Court for Caddo Parish, donated, in 1904, sufficient live oak seedlings to encircle the courthouse square. These trees are quite large at the present time. Their branches generally meet and overlap in the spaces between the trees. Benches placed underneath the trees provide places for rest, recreation, and entertainment.
In addition to serving as a site for a courthouse, the “square” is frequently and incidentally used, and has been so used for many years, for public meetings of various kinds — political, patriotic, and otherwise, such as sports pep rallies, art shows, concerts, et cetera. These uses have not interfered with the use of the square or the courthouse.
No evidence was adduced to show that the town or City of Shreveport ever asserted title to the square or to a right to its possession, control, or administration. Mayor Clyde E. Fant, who has been in *206 office for almost 20 years, testified he had never known the City to assert title to the courthouse square. Lallie F. Clawson, who served as secretary-treasurer of the police jury from 1922 to 1962, and who has been a member of the jury since 1966, testified that the Caddo Parish Police Jury has held possession of and dominion and control over the courthouse square and the courthouses erected thereon ever since he has had any connection with the jury.
In the legislative act incorporating the town of Shreveport it was recognized that the seat of justice of the Parish of Caddo was located at Shreveport; the act creating the Parish of Caddo was amended to provide “that the name of the seat of Justice of the Parish of Caddo shall be called Shreveport, so long as the same shall be so located.”
First, logically, for consideration are the exceptions of no right and of no cause of action.
Plaintiffs as citizens and taxpayers are without right of action to institute this proceeding or to stand in judgment. It is neither alleged nor established they have any interest different from that of the public generally. In State ex rel. Schoeffner v. Dowling, 1S8 La. 706, 104 So. 624, 626 (1925), it was pointed out that a citizen and taxpayer cannot, by mandamus, enforce performance of a duty by public officers except on a showing of special, peculiar interest apart from that as one of the general public. There we find this appropriate observation:
“There ought to be, it would seem, no divergence of opinion on this question, but it must be admitted that there is some conflict of views among the lawwriters and some lack of harmony in the jurisprudence. But we think the great weight of authority is decidedly to the effect that, without some peculiar, special, and individual interest, a citizen, though he he a taxpayer, has no standing in court to champion a cause or subject-matter which pertains to the whole people in common, nor has an individual citizen a legal standing in court to enforce the performance of a duty which a public officer owes to the public at large, unless it clearly appears that such individual citizen has a special and peculiar interest in the performance of such duty apart from the interest which he has as one of the general public in having the duty performed." (Emphasis supplied.)
This principle was noted and followed in Cully v. City of New Orleans, 173 So.2d 46, 48 (La.App., 4th Cir. 1965 — writs refused), wherein it was held that taxpayers of a municipality did not have any real and actual interest necessary to maintain a suit to enjoin the city from using certain donated land for other than educational purposes in view of a lack of showing of any interest different from that of the public generally.
The rule is thus stated in 39 Am.Jur., Parties § 11, p. 863:
“Public wrongs or neglect or breach of public duty cannot be redressed at a suit in the name of an individual or individuals whose interest in the right asserted does not differ from that of the public generally, or who suffers injury in common with the public generally, even, it seems, though his loss be greater in degree, ttnless' such right of action is given by statute.”
Plaintiffs’ right of action as taxpayers was pointed out in Donaldson v. Police Jury of Tangipahoa Parish, 161 La. 471, 109 So. 34, 38 (1926) :
“The true doctrine of the cases in which taxpayers have been complainants is that they have the right to resort to judicial authority to restrain their public servants from transcending their lawful powers, or violating their legal duties in any unauthorized mode which zoill increase the burden of taxation or otherwise injuriously affect the taxpayers or their property." (Emphasis supplied.)
*207 We find no evidence in the record that would establish that the action and improvements proposed by the police jury and authorized in the tax election would increase the burden of taxation or would otherwise affect plaintiffs as taxpayers or as property owners. The bonds were duly authorized and have been issued and sold. The period of peremption has expired and plaintiffs as well as the courts are without authority to inquire into their validity or the regularity of the proceedings by which the bonds were issued and sold.
We may point out in the instant case, as did the court in Cully v. City of New Orleans, supra, that:
“Plaintiffs cite the case of Anderson v. Thomas, 166 La. 512, 117 So. 573, as authority for the proposition that members of the general public have a right of action to enjoin a municipality from diverting public property from the use to which it had been dedicated. In that case the president of the Civic League and various taxpayers of the City of Shreveport sought to enjoin the City from erecting an auditorium on a square of ground purchased by the City with tax funds and dedicated as a public park. The Court found that the erection of an auditorium would take up the entire square and would utterly destroy its use as a public park. It also found that an auditorium is only a quasi-public place which is let for hire for musical and other entertainments for which an admission is charged, thus excluding the general public. The only reference by the Court to the right of the plaintiffs to bring the suit is as follows:
“ ‘An exception to the capacity of plaintiffs was taken during the trial. It is not urged in the briefs; it is not zvell founded and is overruled. See Stevens v. Walker, 15 La.Ann. 577 * * *
“ ‘As to the right of plaintiffs to maintain this action, in addition to Stevens v. Walker, supra, holding that individuals may maintain actions to keep public places open, we quote from 26 Cyc. 401, approved in State ex rel. Schoeffner v. Dowling, 158 La. 706, 104 So. 624, as follows: * *
“The Anderson case seems actually only to hold that individuals may maintain actions to keep public places open for public use. It is to this effect that it was cited in City of Shreveport v. Kahn, 194 La. 55, 195 So. 461.
“If the Anderson case meant to hold that a citizen without any interest different from that of the public generally or a taxpayer whose burden of taxation is unaffected may maintain an action in cases such as the one before tts now, it is contrary to the case of State ex rel. Schoeffner v. Dowling cited by it and contrary to the holding of many more recent cases heretofore cited by us.” (Emphasis supplied.) 173 So.2d 49-50.
Now, with respect to the exception of no cause of action, these observations appear to be appropriate:
The Constitution of Louisiana, Article 14, Section 14(n), as well as LSA-R.S. 39:-518 et seq. create peremptive periods which bar all actions and attacks upon tax and bond elections and upon the validity and issuance of bonds after the expiration of 60 days from the date of promulgation of the results of the election. See, also, LSA-R.S. 39:568.
In other words, these provisions grant to any person in interest the right to contest the legality of a bond issue, but such grant of a right or cause of action exists only for the specified 60-day period, “after zvhich time, no one may contest the legality, formality, or regularity of the election or debt assumption for any cause zvhatso-ever.” (Emphasis supplied.) LSA-R.S. 39:518.
The election in this case was held in October, 1968. This action was filed September 24, 1969, long after the 60-day peremptive period had expired.
*208 It is recognized, of course, that this is not a suit to directly contest the election or to directly contest the validity or issuance of the bonds. (Naturally, that cannot be done because the 60 days expired so many months ago.) Nevertheless, plaintiffs herein are attempting to do indirectly what the law forbids them to do directly and that is to challenge the purposes for which the bonds were voted, namely, the enlarging, improving, and extending of the present courthouse.
Since plaintiffs cannot contest the election and the issuance of bonds, it follows they cannot indirectly assert a cause of action which has expired, simply by using this indirect means of challenging the purpose for which the bonds were voted. That matter (whether or not the courthouse should be enlarged, extended, and improved) was decided and set at rest by the calling and the conducting of the election and the expiration of the 60-day period.
For the above-stated reasons, we conclude the exceptions of no right and of no cause of action are meritorious and should have been sustained.
Nevertheless, inasmuch as this is an action affecting a public interest, that is, the orderly administration of an important local governmental function, we now direct attention and give consideration to the issues presented on the merits of this cause.
The courthouse square, known as Block 23, constitutes public property. A primary issue, therefore, relates to a question of its control, administration, and management. Obviously, public property, to serve the purposes intended for it, must be under the jurisdiction of some authority. When the plat for the townsite was prepared and filed for record, the police jury governing the area was the only local governing authority in existence. It is, however, claimed that, by the subsequent creation of the town, this ipso facto effected a change in the public ownership of the property, that is, from the parish to the town or city as well as a transfer from the parish to the municipality of the jurisdiction and control of the public property located therein. We find no basis or authority to support such conclusion, that is, that, by the creation of a municipality, a transfer of public property or its control passes from the parish to the municipality. Section 17 of Act 67 of 1839, creating the Town of Shreveport, specifically excepted from the town the authority to lay and collect taxes for state purposes as well as to make disposition of the lands belonging to the parish within the limits of the town.
Cases cited and relied upon by plaintiffs are not in point. None arose out of any controversy between parishes and municipal governments. Nor have the rights of a parish in such a situation as exists here been adjudicated.
The Caddo Parish Police Jury has, as a fact, exercised jurisdiction and control over and has administered the “public square” for 124 years as a location for public buildings. The City of Shreveport is not before this court in this action as a party litigant. The city is not claiming any jurisdiction or authority over this property or the courthouse situated thereon.
The title of the property having been dedicated to the public, the governing authority, which, at the time, was the police jury representing the parish, continues in the public represented by the parish and not in a lesser segment of the public, that is, of the town represented by its governing authority. To hold otherwise would be to deprive a larger segment of the public of the use and enjoyment of the property and to place it in only a smaller segment of the public represented by the municipality. Exceptions to the extent of the responsibility of the maintenance of streets and alleys conferred by statute upon municipalities may be noted. But, our search discloses no authority by which it could be concluded that title or ownership in the public of the streets or alleys is affected or changed from the public supervised and controlled by one governmental *209 agency to another supervised and controlled by a separate governmental agency.
Nor may we thrust the burden of control and administration of this property, the public square and the parish courthouse, upon the City of Shreveport in a proceeding to which it is hot a party nor for which the plaintiffs have authority to stand in judgment.
Nor do we find it has been established that the Shreve Town Company intended to dedicate Block 23 as a park rather than as a site for the seat of government. It would be a matter of conjecture whether donors specifically intended one of these uses over the other. It is one thing to have a tract of land used for “park” purposes as in Anderson v. Thomas, 166 La. 512, 117 So. 573 (1928), and then attempt to change its use to building purposes, but quite another matter to use a tract of land for building purposes, beautify the grounds and permit a use only incidental to its primary purpose. It is not conceivable that doing the latter would effect an exchange of the main and incidental purposes for which the property was dedicated.
Thus, it must be concluded, as the trial court found, that the police jury has jurisdiction and control over and. has actual possession and administration of the property; that such administration and control are exercised in the interest of and for the service and benefit of the public in compliance with its obligation to provide and maintain a courthouse for the parish. LSA-R.S. 33:4713 provides, in part, that:
“Each parish shall provide and bear the expense of a suitable building and requisite furniture for the sitting of the district and circuit courts and such offices, furniture and equipment as may be needed by the clerks and recorders of the parish for the proper conduct of their offices and shall provide such other offices as may be needed by the sheriffs of these courts and by the tax collectors and assessors of the parish and shall provide the necessary heat and illumination therefor.”
With respect to the question of the reasonableness of the action of the police jury, it may be properly observed that one of the rules of law which is firmly imbedded in the jurisprudence of this State is to the effect that a court may not interfere with the exercise of the discretion nor substitute its judgment for that of a local governing body except where the action is so clearly arbitrary and capricious as to be unreasonable and oppressive. City of Shreveport v. Conrad, 212 La. 737, 33 So. 2d 503 (1947); Gibson v. City of Baton Rouge, 161 La. 637, 109 So. 339, 47 A.L.R. 1151 (1926); Hunter v. City of Shreveport, 216 So.2d 140 (La.App., 2d Cir. 1968 —writ refused); Boyle v. New Orleans Public Service, Inc., 163 So.2d 145 (La. App., 4th Cir. 1964); Scott v. City of West Monroe, 95 So.2d 343 (La.App., 2d Cir. 1957); Archer v. City of Shreveport, 85 So.2d 337 (La.App., 2d Cir. 1956).
The improvement and expansion of the courthouse, where the need is established, is an obligation of the police jury. This governing authority exercised its discretion after much study and on the advice of a citizens’ committee. A bond and tax election conferred the authority and the means upon the police jury to make the improvements. We find no basis for concluding there was any arbitrary or capricious action on the part of the police jury.
Nor is there merit in plaintiffs’ claim that other quarters might have been obtained at lesser expense. The obtaining of such other quarters was a matter considered by the police jury. In this connection it may be well to point out that the purchase of other locations was not authorized in the bond and tax election; and the expenditure of funds, provided by that election, for other purposes than the specific purpose of expanding and otherwise improving the courthouse, would have been clearly unauthorized.
*210 Whether or not the removal of certain agencies from the courthouse, the furnishing of whose quarters is not an obligation of the police jury, would make unnecessary the improvements contemplated is a matter likewise within the wise discretion of the police jury, as was the matter of the removal of a few trees to make room for the expansion and improvements. We find no basis, with respect to this matter, for interference with the jury’s discretion.
For the reasons assigned, we find no error in the judgment recalling and annulling the rule upon defendant to show cause why a preliminary or final injunction should not issue and, on the trial of the merits, rejecting plaintiffs’ demands and dismissing their suit.
The judgment appealed is accordingly affirmed at plaintiffs-appellants’ costs.
Affirmed.